No. 25-1384

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

Svitlana Doe, *et al.*,

*Plaintiffs-Appellees*,

v.

Kristi Noem, Secretary of Homeland Security, *et al.*,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## EMERGENCY MOTION FOR STAY PENDING APPEAL

———————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

PATRICK GLEN
*Senior Litigation Counsel*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*
First Cir. Bar No. 1216699
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 878,
Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
katherine.j.shinners@usdoj.gov

ZACHARY CARDIN
JOSEPH A. DARROW
ELISSA FUDIM
DANIEL R. SCHUTRUM-BOWARD
*Trial Attorneys*

**INTRODUCTION**

Under the federal immigration laws, the Secretary of Homeland Security is empowered to grant "parole"—a temporary release from immigration detention into the interior of the United States—"on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The prior administration used that authority to establish special parole programs under which that standard would be deemed generally satisfied for eligible aliens from Cuba, Haiti, Nicaragua, and Venezuela (known collectively as "CHNV").

The new administration determined that such categorical parole programs were both inconsistent with the best use of the statute and contrary to the best interests of the United States. The parole statute does not provide a shortcut to lawful permanent residency. Instead, it empowers the Secretary to terminate parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). Accordingly, the Secretary issued notices that terminated all grants of CHNV parole in 30 days.

All of this is lawful, appropriate, and well within the bounds of the statute. Yet the district court here effectively enjoined the Secretary's terminations by purporting to "stay" their effect pending judicial review. That injunction is plainly unlawful—because the court lacks jurisdiction to enter such relief and the Secretary plainly has discretion to terminate parole. Moreover, the district court's unlawful

1

order is imposing serious irreparable harm by overriding the Secretary's discretionary determinations about immigration policy and forcing the United States government to retain hundreds of thousands of aliens in the country against its will.

The district court plainly lacked jurisdiction to enter the relief it did. The immigration laws clearly preclude judicial review of discretionary decisions by the Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), and the termination of parole is expressly discretionary because the statute allows termination of parole if doing so is appropriate "in the opinion of the Secretary of Homeland Security," 8 U.S.C. § 1182(d)(5)(A). The district court's theory that the Secretary exercised that discretion in an improper way does not change the fact that this was a discretionary act—and is non-reviewable.

The district court's order was also wrong on the merits. The statute authorizes the Secretary to terminate parole whenever, in her "opinion," the "purposes of such parole … have been served." 8 U.S.C. § 1182(d)(5)(A). Nothing about that language requires individualized consideration. It is especially perverse to require individualized consideration in this context, after the prior administration established these parole programs applying a categorical approach. The district court's other theory—that one of the many policy reasons for the termination rested on a supposed legal error—is equally wrong, and does not support the sweeping relief awarded in any event.

For these reasons, the government is likely to prevail on appeal, while the balance of harms and public interest would be further served by a stay that allows politically accountable leadership to control federal immigration policy consistent with statutory law. This Court should therefore grant a stay pending appeal.

## BACKGROUND

Parole is, by definition, a temporary release from immigration detention into the interior of the United States. Congress in 8 U.S.C. § 1182(d)(5)(A) granted the Secretary of Homeland Security (the Secretary) "remarkably broad" discretion with respect to grants of parole. *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987).

That statute authorizes the Secretary, "in [her] discretion," to "parole" applicants for admission "temporarily under such conditions as [the Secretary] may prescribe" "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). It further provides that parole may be terminated "when the purposes of such parole shall, *in the opinion of* the Secretary of Homeland Security, have been served." *Id.* (emphasis added). The provision states in full:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served

the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

The relevant Plaintiffs are beneficiaries of certain special parole programs created and administered by DHS under the last administration: the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV). App-011–016. Under those programs, nationals of Cuba, Haiti, Nicaragua and Venezuela who met eligibility requirements could be considered for discretionary advance authorization to travel to certain U.S. ports of entry to request discretionary consideration for parole for up to a two-year term. *Implementation of a Parole Process for Venezuelans*, 87 Fed. Reg. 63507 (Oct. 19, 2022), as amended by 88 Fed. Reg. 1279 (Jan. 9, 2023); 88 Fed. Reg. 1266 (Jan. 9, 2023) (Cuba program); 88 Fed. Reg. 1243 (Jan. 9, 2023) (Haiti program); 88 Fed. Reg. 1255 (Jan. 9, 2023) (Nicaragua program). In support of each program, DHS cited categorical reasons that parole of nationals from these four countries would provide a significant public benefit and address the aliens' urgent humanitarian needs, based on general migration and country conditions. *See* 87 Fed. Reg. at 63,511–15; 88 Fed. Reg. at 1272–75; 88 Fed. Reg. at 1248–51; 88 Fed. Reg. at 1260–63. In promulgating this program, DHS made clear that, consistent with the parole statute's terms, "DHS may terminate parole in its discretion at any time." *E.g.*, 88 Fed. Reg. at 1272.

On January 20, 2025, following the presidential transition, the President signed executive orders calling for DHS to ensure that the § 1182(d)(5)(A) authority to grant parole "is exercised only on a case-by-case basis" and "only when an individual alien demonstrates urgent humanitarian reasons or a significant public benefit derived from their particular continued presence in the United States," *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025); and "consistent with applicable law," to "[t]erminate all categorical parole programs that are contrary to the policies of the United States established in my Executive Orders, including the program known as" CHNV, *Securing Our Borders*, 90 Fed. Reg. 8467 (Jan. 20, 2025). The executive orders directed DHS to examine and modify its processes as appropriate to follow these principles. *See id.*

In a Federal Register Notice (FRN) published on March 25, 2025, DHS terminated the CHNV parole programs. App-052 (*Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13,611 (Mar. 25, 2025)). That termination means that unexpired grants of parole under CHNV were set to terminate on April 24, 2025, unless the Secretary decided otherwise in individual cases. App-053.

The Secretary explained that she terminated the programs because, after considering their effect and DHS's experience operating them, the programs "do not serve a significant public benefit, are not necessary to reduce levels of illegal

immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with the Administration's foreign policy goals." App-054. To the extent that "urgent humanitarian reasons" supported any grants of parole under CHNV, "DHS believes that [such] reasons for granting parole [are] best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." *Id.*

Upon publication, Plaintiffs sought emergency relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 705, 706(2), asking the district court to enjoin implementation. As relevant here, Plaintiffs also sought to certify a class of similarly situated individuals whose parole was subject to termination under the FRN. *See* App-027–28.

On April 14, 2025, the district court largely granted Plaintiffs' request for relief. It determined that the jurisdictional bar to judicial review of discretionary decisions did not bar review of the Secretary's decision, because, according to the court, the bar cannot apply if the government "violates the parole statute." App-021. Relying on the presumption of judicial review, the court determined that the "categorical" termination of parole was not permitted by the statute and was thus not barred from review. App-021–25. The district court did not address the fact that

parole grants under the challenged programs were authorized on an effectively categorical basis.

The district court also found that the decision to terminate parole periods was not "committed to agency discretion by law" under the APA, 5 U.S.C. § 701(a)(2), because the requirement that the Secretary determine that "the purposes of such parole ... have been served" constitutes a "meaningful standard" by which to judge the exercise of discretion. App-026. But the court ignored that this standard is qualified by placing the determination solely "in the opinion of the Secretary."

Turning to the merits, the district court determined that Plaintiffs were likely to succeed on their APA claims on two grounds. *First*, the court held that one of the Secretary's justification for terminating the parole periods—namely, so it could better secure the ability to use expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II)—was based on a "legal error" about the applicability of that clause to those who were paroled in the past. *See* App-031–35. *Second*, tracking its jurisdictional ruling, the court held that, because the parole statute imposes a "case-by-case basis" requirement on grants of parole, termination of parole must also be individualized. App-036.

The court certified a class of all CHNV parolees subject to the terminations, "except: (1) those individuals who voluntarily left, and remain outside, the United States prior to the issuance of [the FRN]; and (2) those individuals who choose to

opt out of the class in order to seek relief in separate litigation." App-028, App-042.

The district court thus entered an order staying the portion of the FRN that "revokes, without case-by-case review, the previously granted parole and work authorization issued to" aliens paroled into the United States under the CHNV parole programs, and staying the individualized notices of termination sent to those parole beneficiaries. App-040–41; *see* App-066. The court denied the government's request for a stay pending appeal. App-039–40; *see* Fed. R. App. P. 8(a)(2)(A). Defendants filed a notice of appeal on April 18, 2025. *See* App-126.

## ARGUMENT

A stay is plainly warranted here. Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The district court's rulings on both threshold and merits issues are palpably flawed, because the Secretary's termination of parole grants is well within her statutory discretion, and the government is likely to succeed on its appeal of the resulting order staying that termination. The equities likewise favor a stay because of the profound impact of this order on the Executive's control over immigration,

coupled with the very modest interests of aliens who were only given an inherently time-limited and readily terminable benefit.

## I.     The District Court's Order Is Appealable

At the outset, the court's order is immediately appealable under 28 U.S.C. § 1292(a)(1), despite being labeled a "stay" of agency action, because it indefinitely prohibits the government from terminating parole for CHNV parolees in accordance with the FRN and thus "has the 'practical effect' of granting or denying an injunction." *Abbott v. Perez*, 585 U.S. 579, 594 (2018); *see also Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (finding TRO appealable because it carried "hallmarks of a preliminary injunction"); *Fryzel v. Mortgage Elec. Registration Sys., Inc.*, 719 F.3d 40, 43 (1st Cir. 2013) (holding that a "stay" was an appealable interlocutory order, looking to its "operative terms and effect" instead of its "label"); *Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 27 (1st Cir. 2020) (looking to presence of adversarial presentation and whether any further interlocutory relief is available). Likewise, orders that intrude on "essential Presidential prerogatives" are also more likely to constitute appealable injunctions. *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982); *see also OPM v. Am. Fed'n of Gov't Employees*, 473 U.S. 1301, 1305 (1985) (Burger, C.J., in chambers) (similar); *Pacito v. Trump*, No. 25-1313, Dkt. 28 (9th Cir. Mar. 25, 2025) (granting stay pending appeal of injunction of Presidential exercise of authority).

Applying these principles the district court's stay of the FRN is immediately appealable. It has the "practical effect" of an injunction because it indefinitely prohibits the government from terminating parole grants as set forth in the FRN. It applies nationwide to all aliens with parole under the CHNV programs that was not set to expire before April 24, 2025. It has serious, irreparable consequences because it indefinitely prevents the Secretary from pursuing removal of individuals subject to the stay. It was entered after adversarial presentation. Unlike a temporary restraining order, no other interim relief that could give rise to an interlocutory appeal is contemplated. And the order provides Plaintiffs and the class with "some or all of the relief" that they ultimately seek in the litigation. *Fryzel*, 719 F.3d at 43.[1] The Court thus has jurisdiction over this appeal.

## II. Defendants are Likely to Prevail on the Merits.

### A. The termination decisions are not reviewable.

At the threshold, the government is likely to prevail on the merits because the district court had no authority to review the Secretary's parole terminations in the first place. The district court incorrectly determined that it had jurisdiction to review

---

[1] *See also, e.g.*, *Wyoming v. DOI*, No. 18-8027, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018) (stay of final rule under 5 U.S.C. § 705 was appealable interlocutory order); *All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725, at *3 n.3 (5th Cir. Apr. 12, 2023) (stay of drug approval under 5 U.S.C. § 705 was appealable).

the Secretary's discretionary parole decisions by adopting an untenably narrow reading of the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii).

That statute provides that "no court shall have jurisdiction to review ... any other decision or action ... the authority for which is specified ... to be in the discretion of the ... Secretary." *Id.* The exercise of parole authority under § 1182(d)(5)(A)—which permits the Secretary to terminate parole grants "when the purposes of such parole shall, *in the opinion of the Secretary of Homeland Security*, have been served"—is just such a discretionary "decision or action." *See* 8 U.S.C. § 1182(d)(5)(A) (emphasis added). It is therefore subject to the bar.

Neither Plaintiffs nor the district court disputed that termination decisions are specified by the parole statute to be in the discretion of the Secretary. App-020. Other courts agree too. *See, e.g.*, *Samirah v. O'Connell*, 335 F.3d 545, 548 (7th Cir. 2003) (authority to "grant or revoke" parole under § 1182(d)(5)(A) is a matter of agency discretion barred from review by § 1252(a)(2)(B)(ii)); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010). Section 1252(a)(2)(B)(ii) thus precludes review of Plaintiffs' challenges to the decision to terminate parole, as publicized in the FRN. *See Bernardo v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016) (finding the presumption of judicial review of agency actions "overcome by specific language").

The district court held that it had jurisdiction, despite this bar, because in its view the parole "statute cannot be read to give the Secretary the discretion" to

categorically terminate the parole period for members of the class," and instead requires her to "attend, in some way, to the reasons an individual alien received parole." App-021. That reasoning is fundamentally flawed because it puts the cart before the horse. The court essentially disagreed with the *manner* in which the Secretary exercised her discretionary authority to revoke parole. But that misses the point: Even if the Secretary had exercised her discretionary parole-termination authority in an improper or inappropriate way, the fact remains that she *has* this discretionary termination authority. *See* 8 U.S.C. § 1182(d)(5)(A) (permitting termination of parole when "in the opinion of the Secretary," its purposes have been served). And that fact is all that matters for the review bar. Indeed, the whole point of the bar is to foreclose just the sort of inquiry into the exercise of discretion that the district court conducted to evade the jurisdictional bar.

Nor does it matter, for purposes of jurisdiction, that Plaintiffs frame their challenge as targeting an overarching policy on how to make a parole determination. That premise is false. There is no overarching "policy" separate and distinct from the terminations of parole—instead, there is merely a *common reason* given by DHS and expressed in the FRN for terminating each class member's parole.

In short, Congress has precluded judicial review of the FRN's termination of grants of parole under 8 U.S.C. § 1252(a)(2)(B)(ii). The district court erroneously determined it had jurisdiction to entertain Plaintiffs' claims and request for

emergency relief by improperly looking to the merits to determine its jurisdiction, and the Defendants are thus likely to succeed on appeal.

## B. The APA also precludes review here.

Similarly, the district court erred in concluding that the termination was reviewable under the APA, which does not permit review of agency actions that are "committed to agency discretion by law" or where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1), (2). Beyond § 1252(a)(2)(B)(ii)'s review bar, the APA precludes judicial review since parole decisions are committed to agency discretion by law. Section 1182(d)(5)(A) commits the parole termination decision to agency discretion by bestowing the Secretary with the discretion to grant parole where certain conditions are met. Moreover, it places no limits on the Secretary's discretion to deny or terminate parole, which she may end simply "when the purposes of such parole shall, *in the opinion of the Secretary of Homeland Security*, have been served." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The statute provides no judicially manageable standards on which a court may base its review of that determination. *See Lincoln v. Vigil*, 508 U.S. 182, 191–94 (1993); *Webster v. Doe*, 86 U.S. 592, 600 (1988). The Secretary made just such a determination here. *See id.*

Here too, the district court concluded that the statute did not permit the Secretary to "categorically terminate grants of parole." App-026. That conclusion

was wrong, *see infra* § II(B), and it ignores that the key language—"in the opinion of the Secretary"—puts the determination entirely in the Secretary's purview and forecloses a "meaningful standard" for judicial review. *Webster*, 486 U.S. at 600 (no review when statute provided for terminations when relevant official "shall deem such termination necessary or advisable in the interests of the United States"). Accordingly, the government is likely to prevail for the additional reason that the district court erred in determining that the FRN's parole terminations are reviewable under the APA.

### C. The order is premised on an incorrect interpretation of the parole statute.

Even if the Secretary's decision were reviewable, Defendants are also likely to prevail on the merits due to the district court's erroneous interpretation of the parole and expedited removal statutes.

*First*, the government is likely to prevail on appeal because the district court erred in concluding that the parole statute imposes a "case-by-case basis" requirement on termination of parole. App-036. There is no such requirement. That statute clearly requires case-by-case determinations for *granting* parole. But it imposes no such requirements on terminating parole. Instead, the statute requires only that, "in the opinion of the Secretary," the purposes of parole have been served. 8 U.S.C. § 1182(d)(5)(A). *See, e.g., Zheng v. Napolitano*, 2009 WL 1258908, at *2 (D. Colo. May 4, 2009) (rejecting argument asserted in habeas petition that sought

to "engraft[] the requirements pertaining to initial parole decisions onto parole revocation decisions").  Nothing bars the Secretary from making that determination on grounds that apply to more than one parolee or are common to an entire group of parolees—especially when one of those grounds is that parole was granted without the case-by-case determinations for granting parole.  Requiring the Secretary to make case-by-case determinations to terminate parole (which the statute does not require) that was granted on a categorical basis (which the statute forbids) would be ironic at best and perverse at worst.

The district court concluded that the "case-by-case" requirement for a grant of parole carries through to the ability to terminate parole.  *See* App-036.  But the only support the court cites for this conclusion is the statute's references to "such parole" and "the alien" when referring to the Secretary's termination authority.  *See id.*  The statute's reference to an individual parole grant provides no basis for carrying over the "case-by-case" condition for parole grants to the Secretary's determination that the purposes of such parole have been served.[2]  In other words, it does not preclude DHS from relying on a common reason for determining that the purposes of parole for multiple aliens have been served (again, particularly where the urgent humanitarian and public-benefit reasons for granting CHNV parole were

---

[2] Moreover, "even where a statute requires individualized determinations," it does not foreclose "a categorical exercise of discretion." *Muniz v. Sabol*, 517 F.3d 29, 39 (1st Cir. 2008) (citing, *inter alia*, *Lopez v. Davis*, 531 U.S. 230, 244 (2001)).

assessed on a categorical basis). This understanding of the Secretary's authority under Section 1182(d)(5)(A) is consistent with decades of case law addressing similar immigration authorities. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 313 (1993) (noting agency need not "forswear use of reasonable presumptions and generic rules" even where statue required "some level of individualized determination"); *Yang v. INS*, 79 F.3d 932, 936 (9th Cir. 1996) (similar); *Mak v. INS*, 435 F.2d 728, 730 (2d Cir. 1970) (similar).

Had Congress wished to impose a case-by-case requirement on terminations of parole, it could have expressly done so; after all, it had just created such a requirement for granting parole. Further, the FRN specifically contemplates the Secretary may determine in individual cases to extend parole to a CHNV parolee, should the CHNV parolee have individualized humanitarian needs for parole. *See* App-054. No more is required. The district court thus erred in finding the Plaintiffs were likely to succeed on the merits.

*Second*, the district court also erred by concluding the DHS acted arbitrarily by invoking the need to conduct expeditious removal of those without a basis for seeking more permanent status in the United States. *See* App-032–35; App-061. The Secretary's reasoning was sound: An alien who was paroled in the past, but whose parole has terminated or expired, may be processed for expedited removal under § 1225(b)(1)(A)(iii)(II). But allowing those individuals to remain in the

country until the parole expires under its own terms could imperil the availability of that expedited-removal option, given that expedited removal cannot be used under this clause once an alien has been in the country for a certain length of time. *See* App-085–86.[3]

More fundamentally, even if the Secretary had erred in this one rationale, her conclusion would stand and there would be no basis to stay the terminations in their entirety. The FRN was based on several other independently sufficient reasons, too. *See* App-062 ("neither humanitarian reasons nor public benefit warrants the continued presence of aliens paroled under the CHNV programs and the purposes of such parole therefore have been served"), App-056–58 (expressing concern with expanded public benefits eligibility of certain parolees), App-061 (recognizing "strong interest in promptly returning parolees when the basis for the underlying parole no longer exists"). Even the district court acknowledged that the agency's rationale was based on numerous factors. App-007–08. Yet without the benefit of

---

[3] The statute's use of the present perfect tense ("has not been ... paroled") here reflects a "state that continues into the present," *Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1261-62 (11th Cir. 2025), so an alien whose parole has terminated or expired may be processed for expedited removal. That reading accords with the statutory and historical context of parole, which is a temporary release into the interior of the country under which the parolee remains constructively at the border. *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958); *Ibragimov v. Gonzales*, 476 F.3d 125, 137 (2d Cir. 2007); 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i); *id.* § 1.2. When parole terminates, an alien reverts to the status he possessed prior to the grant of parole. For all CHNV parolees, that prior status is that of an applicant for admission.

an administrative record, the district court summarily dismissed the government's other reasons for terminating parole grants early. *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 930 (2025) (stating long-accepted rule that remand is unnecessary "when an agency's decision is supported by a plethora of factual findings, only one of which is unsound"); *Nadal-Ginard v. Holder*, 558 F.3d 61, 69 n.7 (1st Cir. 2009) ("We therefore need not reach the [agency's] other rationale for its decision [because if the other rationale constituted error] . . . there was no prejudice").

Plus, if the Secretary were incorrect in her premise that expedited removal is available, that would merely have been *more* reason for the Secretary to promptly terminate parole and begin the lengthy *non-expedited* removal process. So even if there were any legal error in the Secretary's reasoning, it would change nothing on the bottom line; no stay or remand was warranted.

## III.    The Remaining Factors Support a Stay Pending Appeal.

The equities favor a stay, because the district court's order irreparably harms the government by placing an extra-statutory burden on the government to justify termination of parole, contrary to the Executive Branch's prerogative and the public interest in expeditious removal of aliens without a basis to obtain status in the United States. This burden is unreasonable given the hundreds of thousands of individuals that were granted parole under the prior Administration's CHNV program.

The district court's order harms the government by imposing requirements on DHS's ability to terminate parole that are not contained in the statute.  It irreparably harms the United States and the public by limiting the Executive Branch's ability, consistent with the President's Executive Orders, to exercise its discretionary authority under 8 U.S.C. § 1182(d)(5)(A) as provided by Congress.  *See Doe #1 v. Trump*, 944 F.3d. 1222, 1228 (9th Cir. 2019) (Bress, J., dissenting) (an injunction that limits presidential authority is "itself an irreparable injury"); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) (noting that "any time a State is enjoined from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"); *Pacito v. Trump*, No. 25-1313, Dkt. 28 (9th Cir. Mar. 25, 2025) (granting stay pending appeal of injunction of Presidential exercise of authority).

The order also inhibits the government's pursuit of its foreign policy goals, as the government has also assessed that the CHNV parole programs, and the specific foreign policy approach that justified the creation of those programs, are inconsistent with the Administration's current goals.  App-054; *see also Dep't of Navy v. Egan,* 484 U.S. 518, 529 (1988) ("[F]oreign policy [is] the province and responsibility of the Executive."); *Haig v. Agee,* 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

Most importantly, the relief marks a severe intrusion into the core Executive function of managing the immigration system. *See Arizona v. U.S.*, 567 U.S. 387, 394–96 (2012); *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government"). It impedes the government's strong interest in being able to remove aliens from the United States who lack a basis to obtain a lawful status or another lawful basis to remain in the United States. *See* App-061. The order effectively compels DHS "to place a greater proportion of this population in section 240 removal proceedings to effectuate their removal, further straining the already over-burdened immigration court system." *Id*. Although the order theoretically leaves open the alternative of making individualized parole terminations, this alternative is unrealistic due to the volume of parolees at issue. *See* App-054 (explaining that 532,000 individuals were granted parole under the CHNV programs).

In contrast, CHNV parolees will not suffer irreparable harm if their parole is permitted to expire, particularly because their permission to remain in the country on parole was always a matter of grace and was always meant to be temporary. *See, e.g.*, 88 Fed. Reg. 1272 (announcing Cuba program) ("DHS may terminate parole in its discretion at any time"). Parolees, like some Plaintiffs, may already have other immigrant or nonimmigrant status. *See, e.g.*, App-016 (noting Daniel Doe has

temporary protected status until August 2025). Moreover, the termination of parole is not equivalent to a final removal order; those parolees that seek asylum, in particular, would have the opportunity to assert that claim if they are placed in expedited removal or removal proceedings. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1229a(c)(4).

The balance of the harms thus strongly favors a stay of the district court's order because the order intrudes on the Executive Branch's ability to manage the immigration system by terminating purely discretionary, temporary grants of parole.

## CONCLUSION

Defendants respectfully request that this Court stay the district court's order pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

BRIAN C. WARD
Acting Director

PATRICK GLEN
Senior Litigation Counsel

/s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
First Cir. Bar No. 1216699
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 598-8259
(202) 305-7000 (facsimile)
katherine.j.shinners@usdoj.gov

ZACHARY CARDIN
JOSEPH A. DARROW
ELISSA FUDIM
DANIEL R. SCHUTRUM-BOWARD
*Trial Attorneys*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 4,982 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

Dated: April 21, 2025

*/s/ Katherine J. Shinners*
Katherine J. Shinners

## CERTIFICATE OF SERVICE

I, Katherine J. Shinners, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: April 21, 2025                    /s/ *Katherine J. Shinners*
                                         Katherine J. Shinners