No. 25-1384

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

Svitlana Doe, *et al.*,

*Plaintiffs-Appellees*,

v.

Kristi Noem, Secretary of Homeland Security, *et al.*,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## REPLY IN SUPPORT OF EMERGENCY MOTION
## FOR STAY PENDING APPEAL

———————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

KATHERINE J. SHINNERS
PATRICK GLEN
*Senior Litigation Counsel*

ELISSA FUDIM
ZACHARY CARDIN
DANIEL R. SCHUTRUM-BOWARD
*Trial Attorneys*

BRIAN C. WARD
*Acting Assistant Director*
First Cir. Bar No. 1192347
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-9121
Email: brian.c.ward@usdoj.gov

# INTRODUCTION

The parole statute expressly empowers the Secretary of Homeland Security to terminate parole grants when, in her opinion, those parole grants no longer serve their intended purpose. She did exactly that. But the district court improperly overrode that exercise of discretionary authority. This Court should stay that order pending appeal.

The district court lacked jurisdiction to review the termination of parole grants because the statute bars judicial review of discretionary decisions like this, no matter their level of generality. Even if review were available, Defendants are likely to prevail. No individualized determinations are necessary to terminate parole—especially where, as here, the initial finding of urgent humanitarian reasons or significant public benefit underlying the grant of parole rested on programmatic, non-individualized findings. And, in objecting to the Secretary's reasoning about the interplay between parole and expedited removal, the district court both ignored the other independent reasons the Secretary provided for terminating existing parole grants and also misread the expedited removal statute in a manner inconsistent with its text and the overall statutory scheme. Plaintiffs have no good response.

Finally, the equities strongly favor a stay because the district court's order undermines the public interest in expeditious removal of aliens without a basis to obtain lawful status in the United States—whereas parole by its nature is a temporary

1

and discretionary benefit to which no alien has an entitlement, and paroled aliens with other bases to lawfully remain in the United States remain free to assert them.

## ARGUMENT

### I.     Defendants Are Likely To Prevail on the Merits.

Plaintiffs do not dispute that this Court has jurisdiction to review the district court's order. *See* Stay Mot. 9-10. They fail to rehabilitate the district court's disregard of the threshold jurisdictional barriers. And on the merits, they continue to misapprehend the parole statute. The Court should grant a stay.

#### A. The decision to end parole grants is not reviewable.

At the threshold, the district court lacked authority to review the Secretary's decision to end certain discretionary parole grants, and that in itself makes reversal on appeal likely. Congress provided that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review ... any other decision or action ... the authority for which is specified ... to be in the discretion of the ... Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii). The authority to end parole grants is plainly specified to be in the Secretary's discretion: The Secretary "may … in h[er] discretion parole" aliens "temporarily under such conditions as [s]he may prescribe" and terminate parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.* § 1182(d)(5)(A); *see* Stay Mot. 10-13.

2

Plaintiffs acknowledge that "the parole statute makes discretionary … the determination of 'when the purposes' of that individual noncitizen's parole 'have been served.'" Opp. 12. They dispute only the "level of generality" at which that discretion can be applied. *Id*. But nothing in § 1252(a)(2)(B)(ii) limits its review-stripping language based on any "level of generality." Whether general or specific, discretionary determinations are not subject to judicial review. Plaintiffs' contrary position amounts to arguing that § 1252(a)(2)(B)(ii) allows judicial review if the Secretary exercises her discretion improperly (at the wrong "level of generality")— but that is not what the statute says, and it defeats the statute's purpose. *See Patel v. Garland*, 596 U.S. 328, 338-39 (2022) (holding that related provision in § 1252(a)(2)(B)(i) covers "any judgment *relating to* the granting of relief," "not just discretionary judgments or the last-in-time judgment" in an individual case).

In any case, nothing in § 1182(d)(5)(A) limits the Secretary to ending a parole grant on an individualized basis. Nor would such a requirement make sense when all the parole grants at issue here were under the same categorical parole programs the Secretary has decided no longer serves their intended purpose. Those processes were discretionary, and noted from the outset that they, and any parole grants under them, could end at any time. *See, e.g.*, 88 Fed. Reg. at 1272 ("DHS may terminate parole in its discretion at any time"), 1277 ("The Secretary retains the sole discretion to terminate the Parole Process … at any point."). It defies logic to suggest that the

Secretary can *create* parole programs that allow parole to be granted based on categorical considerations, and on that basis allow hundreds of thousands of aliens into the country—but must *terminate* those grants of parole one at a time, on a case-by-case basis, even where the Secretary has determined that those underlying considerations no longer exist.

Plaintiffs' cited authorities do not help them. *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024), held that a statute providing the Secretary "may, at any time for what he deems good and sufficient cause, revoke" visa approvals was "a quintessential grant of discretion to the Secretary" for which § 1252(a)(2)(B)(ii) barred review. *Id*. at 13-14. Section 1182(d)(5)(A) is framed in even more discretionary terms, requiring only that the Secretary is of "the opinion" that "the purposes of such parole … have been served." The review bar therefore applies *a fortiori* here. The remainder of the cases Plaintiffs cite, Opp. 13 n.2, dealt with *unreasonable delay* claims which district courts held were not clearly covered by language in § 1182(d)(5)(A). Here, the statute clearly places decisions to end parole grants in the Secretary's discretion, and review of those decisions is thus foreclosed by § 1252(a)(2)(B)(ii).

Independently, 5 U.S.C. § 701(a)(2) forecloses APA review here because the challenged decisions are "committed to agency discretion by law." *See* Stay Mot. 13-14. Plaintiffs argue that 8 U.S.C. § 1182(d)(5) and § 1225(b) provide "meaningful standards by which the lawfulness of Defendants' actions can be

4

measured" (Opp. 14), but they point to no language in either statute that sets a standard against which a court can judge the Secretary's exercise of discretion to end parole grants she views as no longer serving their intended purpose. Plaintiffs cite *DHS v. Regents of the University of California*, 591 U.S. 1 (2020), as reaching a contrary conclusion with respect to the DACA program. Opp. 14. But *Regents* was heavily grounded in the fact that DACA "created a program for conferring affirmative immigration relief" that provided a focus for judicial review. 591 U.S. at 18. The CHNV programs are different, as they expressly provided that CHNV parole is granted solely as a matter of discretion and can be revoked for any reason, at any time. *See supra* at 3. For this reason too, review was not proper in the first place.

## B. The Secretary's decision is consistent with the parole and expedited removal statutes.

Even if the Secretary's decision were reviewable, Defendants are still likely to prevail on the merits.

*First*, the district court erred in holding that the parole statute requires that parole grants be terminated only on an individualized basis. *See* Stay Mot. 14-16. Plaintiffs argue that the statute contemplates individual, case-by-case decisions (Opp. 18-19), but the statute imposes no similar requirement for *ending* parole. Rather, §1182(d)(5)(A) says that the Secretary can end parole "when the purposes of such parole," in her "opinion" "have been served." Congress could easily have required the Secretary to also make a case-by-case determination that the purposes

5

of an individual parole grant have been served before terminating parole, but it chose not to, and Congress's inclusion of a "case-by-case" requirement for grants but not terminations is powerful evidence that the omission was intentional in the latter case. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

Requiring individualized determinations before ending parole is especially counterintuitive in the context of the generalized public-benefit findings on which the CHNV programs rested, none of which was specific to any individual parolee— *e.g.*, "reduc[ing] strain on DHS personnel and resources"; "minimiz[ing] the domestic impact of irregular migration from" these countries; and "manag[ing] migration collaboratively" with foreign partners. 88 Fed. Reg. at 1272. Those generalized findings meant that an officer deciding whether to parole an individual alien under the program only had to determine that an individual alien met the criteria for the program and warranted a favorable exercise of discretion. That parole was *granted* based on generalized findings underscores that the Secretary can *terminate* parole based on a programmatic determination that those findings no longer support parole. *See* 90 Fed. Reg. at 13612–16 (explaining why the CHNV processes are no longer necessary to enhance border security, did not sufficiently reduce irregular migration or the strain on agency resources, and are no longer justified by their stated foreign policy rationale).

So too for the potential humanitarian reasons the former Secretary stated might be served by parole of aliens from the CHNV countries. As the Federal Register Notice (FRN) explains, "DHS believes that consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances," and "the Secretary retains discretion to continue to extend parole to any alien paroled under CHNV." 90 Fed. Reg. at 13612; *see also* App-048, Scott Declaration (noting that "DHS and USCIS continue to accept and process certain individual parole requests filed on Form I-131 … on case-by-case basis" including for aliens who can identify "urgent humanitarian reasons" for continued parole). Defendants are thus likely to succeed on the argument that particularized consideration of the reasons for an initial parole grant are not required by the statute, or at a minimum not required where the original grant rested on non-individualized findings related to the basis for urgent humanitarian reasons or significant public benefit. For these reasons alone, this Court should stay, at a minimum, the district court's restriction on ending CHNV parole grants "without case-by-case review." App-040.

*Second*, the district court also erred by concluding that the terminations were based on a legal mistake about the impact of the existing parole terms on availability of expedited removal. Despite Plaintiffs' arguments to the contrary (Opp. 16-17),

7

expedited removal was not the sole basis for the Secretary's decision. *See* Stay Mot. 17-18; App-062 ("neither humanitarian reasons nor public benefit warrants the continued presence of aliens paroled under the CHNV programs and the purposes of such parole therefore have been served"), App-056–58 (expressing concern with expanded public benefits eligibility provided by CHNV parole), App-061 (recognizing "strong interest in promptly returning parolees when the basis for the underlying parole no longer exists"). The district court acknowledged that the agency's rationale was based on numerous factors, App-007–08, but did not address why these separate and independent bases for ending parole were insufficient. *See* 90 Fed Reg. at 13612 ("These reasons, independently and cumulatively, support termination of the CHNV parole programs."); *see also* Stay Mot. 18 (collecting cases holding that agency action should stand when supported by multiple bases even if one is found to be unsound); 5 U.S.C. § 706 (noting that "due account shall be taken of the rule of prejudicial error").

In any event, the Secretary's reading of the expedited removal statute was correct. Section 1225(b)(1)(A)(iii)(II) provides that an "alien … who has not been admitted or paroled" may be placed into expedited removal unless he or she "has been physically present in the United States continuously for the 2-year period immediately prior" to the date the agency begins the expedited removal process. The Secretary reasonably concluded that this provision applies to aliens whose parole is

terminated and thus are not currently paroled into the United States, and that allowing parole terms to exceed two years would restrict the agency's ability to remove aliens under this provision. *See* Stay Mot. 16-17 & n.3; *see also* 8 C.F.R. § 212.5(e)(2)(i) (authorizing expedited removal following termination of parole).

Plaintiffs argue, as the district court concluded, that an alien who was paroled can never be subject to expedited removal even if parole ends before the two-year mark. Opp. 14-16. This reading of § 1225(b)(1)(A)(iii)(II) cannot be squared with other relevant statutory provisions. It would require treating former parolees in a different manner than other applicants for admission, but § 1182(d)(5)(A) provides that when parole ends, aliens must "return" to their pre-parole status and "be dealt with in the same manner as that of any other applicant for admission." The district court's reading also rests on the premise that expedited removal pursuant to § 1225(b)(1)(A)(iii)(II) applies only to those who initially "entered the United States without authorization," App-032, but Congress plainly thought otherwise. Congress enacted statutory provisions governing review of expedited removal orders that anticipate that even an alien who was initially "admitted for permanent residence" or "as a refugee" may be placed in expedited removal if "such status" has "been terminated." 8 U.S.C. § 1252(e)(2).

Because both of the district court's rationales for staying the terminations are manifestly flawed, Defendants are likely to prevail on the merits, and a stay of the order below is warranted.

## II.    The Remaining Factors Support a Stay Pending Appeal.

The equities also favor a stay because the district court's order irreparably harms the government by creating an extra-statutory burden on the government's ability to terminate parole grants that do not serve their intended purpose and are no longer consistent with the government's current approach to foreign policy. And the order is contrary to the public interest in expeditious removal of aliens who lack a basis to obtain status in the United States. *See* Stay Mot. 18-20.

Plaintiffs counter that the restrictions the district court imposed are required by the statute (Opp. 9-10), but this argument fails for the reasons explained above, *see supra* at 5-9. They also argue that many "noncitizens paroled through CHNV have pending claims for other forms of immigration relief, and so Defendants are speculating about their ability to (and justification for) removing them." Opp. 10-11. Presumably, Plaintiffs are referring to the FRN's statement that "DHS intends to prioritize for removal those who (1) have not, prior to the publication of this notice, properly filed an immigration benefit request … to obtain a lawful basis to remain in the United States … and (2) are not the beneficiary of an immigration benefit request properly filed by someone else on their behalf." 90 Fed. Reg at 13619. But

this *undermines* Plaintiffs' arguments that they will be harmed by a stay. Insofar as CHNV parolees have other pending requests for immigration benefits, then it is not true that "revocation of all CHNV parole grants through the FRN will cause irreparable harm to hundreds of thousands of CHNV parolees." Opp. 20. It would instead harm only those who have *not asserted a basis* for lawfully remaining in this country.

Plaintiffs further argue that allowing foreign policy concerns to establish irreparable harm for any executive action related to immigration would read the requirement for irreparable harm out of the standard. Opp. 11. Not at all. It just means that when district courts issue orders that impose programmatic constraints on the Executive Branch's exercise of its immigration authorities, the irreparable harm element is—and should be—easy to satisfy.

Ultimately, parole is intended to be temporary and, as the CHNV programs made clear from the outset, DHS retains the discretion to end parole at any time. Whatever harm Plaintiffs might assert from terminating their temporary parole grants is outweighed by the harms to the government and the public from an order that intrudes on the Executive Branch's ability to manage the immigration system and shift its foreign policy. *See* Stay Mot. 20-21. The balance of the harms thus strongly favors a stay pending appeal.

11

## **CONCLUSION**

The Court should stay the district court's order pending appeal.


Respectfully submitted,                    YAAKOV M. ROTH
                                           Acting Assistant Attorney General

                                           DREW C. ENSIGN
                                           Deputy Assistant Attorney General

                                           /s/ *Brian C. Ward*
                                           BRIAN C. WARD
                                           Acting Assistant Director
                                           First Cir. Bar No. 1192347
                                           U.S. Department of Justice
                                           Civil Division
                                           Office of Immigration Litigation
                                           P.O. Box 868, Ben Franklin Station
                                           Washington, DC 20044
                                           Tel: (202) 616-9121
                                           Email: brian.c.ward@usdoj.gov

                                           KATHERINE J. SHINNERS
                                           PATRICK GLEN
                                           Senior Litigation Counsel

                                           ELISSA FUDIM
                                           ZACHARY CARDIN
                                           DANIEL R. SCHUTRUM-BOWARD
                                           Trial Attorneys

                                           *Counsel for Defendants-Appellants.*

## CERTIFICATE OF COMPLIANCE

I certify that this reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the motion contains 2,599 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

Dated: April 28, 2025

/s/ *Brian C. Ward*
BRIAN C. WARD
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I certify that I electronically filed this reply by using the Court's CM/ECF

system, which will provide a copy of this document to all registered participants.

Dated: April 28, 2025          /s/ *Brian C. Ward*
                                    BRIAN C. WARD
                                    U.S. Department of Justice