No. 25-1384

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

SVITLANA DOE; MAKSYM DOE; MARIA DOE; ALEJANDRO DOE; ARMANDO DOE; ANA DOE; CARLOS DOE; OMAR DOE; SANDRA MCANANY; KYLE VARNER; WILHEN PIERRE VICTOR; HAITIAN BRIDGE ALLIANCE; ANDREA DOE; VALENTIN ROSALES TABARES; MARIM DOE; ADOLFO GONZALEZ, JR.; ALEKSANDRA DOE; TERESA DOE; ROSA DOE; MIGUEL DOE; LUCIA DOE; DANIEL DOE; GABRIELA DOE; NORMA LORENA DUS,

                              Plaintiffs - Appellees,

v.

KRISTI NOEM, in their official capacity as Secretary of Homeland Security; PETE R. FLORES, in their official capacity as Acting Commissioner of U.S. Customs and Border Protection; KIKA SCOTT, in their official capacity as the Senior Official performing the duties of the Director of U.S. Citizenship and Immigration Services; DONALD J. TRUMP, in their official capacity as President of the United States; TODD LYONS, in their official capacity as the Acting Director of Immigration and Customs Enforcement,

                              Defendants - Appellants.

## BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL

MATT A. CRAPO
CHRISTOPHER J. HAJEC
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
mcrapo@irli.org
(202) 232-5590

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

DATED: June 18, 2025                    Respectfully submitted,

                                        s/ Matt Crapo

## TABLE OF CONTENTS

**<u>Page</u>**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................................... 1

SUMMARY OF ARGUMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 2

   I.   Secretary Noem's termination of the CHNV parole programs was an exercise of presidential authority and is unreviewable under the APA .......... 4

   II.  This Court should harmonize the parole statute with the President's inherent constitutional authority ........................................................................ 7

CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

**CASES**                                 **Page(s)**

*Ariz. Dream Act Coalition v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ............................................................................. 1

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
  333 U.S. 103 (1948) ........................................................................................... 3

*Crowell v. Benson*,
  285 U.S. 22 (1932) ............................................................................................. 8

*Dalton v. Specter*,
  511 U.S. 462 (1994) ....................................................................................... 6, 7

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
  189 F. Supp. 3d 85 (D.D.C. 2016) ..................................................................... 6

*Garland v. Gonzalez*,
  596 U.S. 543 (2022) ........................................................................................... 4

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ........................................................................................... 8

*Leng May Ma v. Barber*,
  357 U.S. 185 (1958) ........................................................................................... 4

*Nishimura Ekiu v. United States*,
  142 U.S. 651 (1892) ........................................................................................... 2

*Matter of Silva-Trevino*,
  26 I. & N. Dec. 826 (B.I.A. 2016) ..................................................................... 1

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ........................................................................................... 1

*Tulare Cty. v. Bush*,
  185 F. Supp. 2d 18 (D.D.C. 2001) ..................................................................... 6

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) .................................................................................................3

*United States v. Hansen*,
   599 U.S. 762 (2023) .................................................................................................7

*United States v. Texas*,
   599 U.S. 670 (2023) .................................................................................................1

*Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*,
   50 F.4th 164 (D.C. Cir. 2022) ..................................................................................1

## STATUTES

8 U.S.C. § 1101(a)(13)(B) ................................................................................................3

8 U.S.C. § 1182(d)(5)(A) .................................................................................................3

8 U.S.C. § 1182(f) ............................................................................................................3

8 U.S.C. § 1252(a)(2)(B)(ii) .............................................................................................4

## MISCELLANEOUS

Executive Order 14165, Securing Our Borders,
   90 Fed. Reg. 8467 (Jan. 20, 2025) (published Jan. 30, 2025) ................................5

Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and
   Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025) .................................................5

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Reform Law Institute (IRLI) is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).[1]

## SUMMARY OF ARGUMENT

Secretary Noem's termination of the previous Administration's categorical grant of parole to 532,000 aliens from Cuba, Haiti, Nicaragua, and Venezuela (CHNV parole programs) was an exercise of inherent Executive power under Article II of the Constitution as well as discretionary delegated legislative power via the parole statute. Indeed, her actions were directed by the President, and because

---

[1] All of the parties in this case have communicated to *amicus curiae* in writing that they consent to the filing of this brief. No counsel for any party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

1

Secretary Noem's actions were at the behest of the President, her actions are unreviewable under the Administrative Procedure Act (APA).

Furthermore, the district court's reading of the statute introduces a conflict between it and the President's inherent authority. The district court read the parole statute to preclude the Executive Branch from terminating parole except only on a case-by-case, alien-by-alien basis—even though parole under the CHNV programs had been granted *en masse*. But that reading intrudes upon the President's inherent and independent authority to oversee foreign affairs and immigration policy. And, as the government shows, another reading of the statute is, at the very least, permissible, according to which the statute permits categorical termination of parole programs. Accordingly, to avoid constitutional conflict, this Court should harmonize the parole statute with Secretary Noem's exercise of inherent Executive authority by adopting the government's interpretation.

## ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*,

142 U.S. 651, 659 (1892). It is also well-established that the President has independent authority in the areas of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added). Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). And, granted the President's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

"An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B); *see also id.* § 1182(d)(5)(A)

("[S]uch parole of such alien shall not be regarded as an admission . . . ."). In *Leng May Ma v. Barber*, the Supreme Court held that parolees, even though physically present within the United States, have not effected an entry and are treated under the law as though they remain detained at the border. 357 U.S. 185, 188-90 (1958). Accordingly, parolees are subject to the President's inherent exclusion power. By reason of this power, as explained below, Plaintiffs-Appellees are unlikely to succeed on the merits of their action, and this Court accordingly should reverse the district court's order postponing agency action.

## I. Secretary Noem's termination of the CHNV parole programs was an exercise of presidential authority and is unreviewable under the APA.

In their opening brief, the federal Defendants ("the government") demonstrate that the district court lacked jurisdiction to review Secretary Noem's termination decision under the statute. *See* Opening Brief of Federal Defendants-Appellants ("Gov't Br.") at 25-31 (relying on 8 U.S.C. § 1252(a)(2)(B)(ii)'s judicial review bar). As the government suggests, Gov't Br. at 27, the statute's jurisdictional bar does not depend on the manner in which Secretary Noem exercises her parole termination authority. *See Garland v. Gonzalez*, 596 U.S. 543, 554 (2022) (rejecting an interpretation of a jurisdictional bar that would make a court's jurisdiction dependent upon the merits of the claim).

In addition to the jurisdictional bars identified by the government, Secretary Noem's termination is unreviewable as an exercise of presidential authority. On

4

January 20, 2025, President Trump directed Secretary Noem to "[t]erminate all categorical parole programs that are contrary to the policies of the United States established in my Executive Orders, including the program known as the 'Processes for Cubans, Haitians, Nicaraguans, and Venezuelans.'" Executive Order 14165 at § 7(b), Securing Our Borders, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025) (published Jan. 30, 2025). On March 25, 2025, Secretary Noem complied with the President's directive and issued a notice in the Federal Register terminating the CHNV parole programs and notifying aliens who had been granted parole under that program that any unexpired period of parole would end in thirty days. Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025). In this notice, Secretary Noem made clear that she terminated the CHNV parole programs at "the President's direction, and for the independent reasons stated in this notice…." *Id.* Accordingly, as the government suggests, Secretary Noem exercised both inherent Executive authority and delegated statutory authority in terminating the CHNV parole programs. *See* Gov't Br. at 41 (stating that the district court's injunction "would undermine the Executive Branch's constitutional and statutory authority over immigration and the admission of aliens").

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability,

hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, one source of independent authority for Secretary Noem's action came directly from the President in the exercise of his inherent constitutional authority over foreign affairs and immigration policy, and she terminated the CHNV parole programs pursuant to his executive order. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, e.g., Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when

6

a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

Here, Secretary Noem, in addition to "other independent reasons," acted at the direction of the President and implemented his executive order when she terminated the CHNV parole programs. Accordingly, Secretary Noem exercised independent Article II authority in terminating the CHNV parole programs, and the district court lacked jurisdiction to review her actions under the APA. *Dalton,* 511 U.S. at 477. It is, of course, not to the prejudice of the unreviewability of the Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his inherent authority under the Constitution are at least equally so.

## II. This Court should harmonize the parole statute with the President's inherent constitutional authority.

In any event, the district court's reading of the parole statute as precluding the Executive from categorically terminating parole programs intrudes on the President's inherent and independent constitutional authority to oversee foreign affairs and immigration policy. A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate parole programs. *See United States v. Hansen*, 599 U.S. 762, 781 (2023)

7

("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted). Here, the government has persuasively established one such permissible construction—that the parole statute's "case-by-case" limitation on grants of parole does not apply to parole terminations. *See* Gov't Br. at 32-36. Thus, to avoid the conflict between the parole statute, as interpreted by the district court, and the Executive's inherent constitutional authority to protect the nation from foreign threats, this Court should construe the statute as permitting categorical terminations of parole.

## CONCLUSION

For the foregoing reasons, in addition to the reasons put forth by the government, the Court should reverse the district court's order.

Dated: June 18, 2025                           Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
CHRISTOPHER J. HAJEC
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
mcrapo@irli.org
(202) 232-5590

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief complies with the type-volume limitation of Fed. Fed. R. App. P. 29(a)(5) because:

This brief contains 1,975 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: June 18, 2025                Respectfully submitted,

                                    s/ Matt Crapo

## CERTIFICATE OF SERVICE

I certify that on June 18, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>s/ Matt Crapo</u>