25-1384

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————————

Svitlana Doe, *et al.*,

*Plaintiffs-Appellees*,

v.

Kristi Noem, Secretary of Homeland Security, *et al.*,

*Defendant-Appellants*.

———————————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————————

## REPLY BRIEF

———————————————

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

PATRICK GLEN
*Senior Litigation Counsel*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*
First Cir. Bar No. 1216699
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 878,
Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
katherine.j.shinners@usdoj.gov

ELISSA FUDIM
*Trial Attorney*

## TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES .................................................................ii

INTRODUCTION .................................................................................1

ARGUMENT .........................................................................................3

    I.     The Parole Terminations Are Not Reviewable.....................................3

        A.     The INA deprives the district court of jurisdiction....................3

        B.     The APA also forecloses review..................................................8

    II.     The Parole Terminations Were Lawful................................................10

        A.     Parole terminations need not be individualized........................11

        B.     The parole terminations are not arbitrary or capricious............16

    III.    The Equitable Factors Favor The Government....................................22

CONCLUSION ....................................................................................27

CERTIFICATE OF COMPLIANCE....................................................28

CERTIFICATE OF SERVICE .............................................................29

# TABLE OF AUTHORITIES

## CASE LAW

**Page(s)**

*American Immigration Lawyers Ass'n v. Reno* ("AILA"),
199 F.3d 1352 (D.C. Cir. 2000) ...............................................................26

*Arizona v. United States*,
567 U.S. 387 (2012) .............................................................................23

*Biden v. Texas*,
597 U.S. 785 (2022) ...................................................................... 6, 7, 14

*Block v. Community Nutrition Inst.*,
467 U.S. 340 (1984) ..............................................................................3

*Bouarfa v. Mayorkas*,
604 U.S. 6 (2024) ...................................................................................8

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) ............................................................................26

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2021) ..............................................................................6

*Heckler v. Chaney*,
470 U.S. 821 (1985) ..............................................................................9

*Hewitt v. United States*,
No. 23-1002, 2025 WL 1758501 (U.S. June 26, 2025).................................. 17, 19

*INS v. Legalization Assistance Project*,
510 U.S. 1301 (1993) ...........................................................................23

*Kucana v. Holder*,
558 U.S. 223 (2010) ..............................................................................3

ii

*Leng May Ma v. Barber*,
    357 U.S. 185 (1958) ...................................................................20

*Lopez v. Davis*,
    531 U.S. 230 (2001) ...................................................................12

*Muniz v. Sabol*,
    517 F.3d 29 (1st Cir. 2008) ........................................................12

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................24

*Noem v. Doe*,
    No. 24A1079, 2025 WL 1534782 (U.S. 2025) .......................... 22, 26

*Samirah v. Holder*,
    627 F.3d 652 (7th Cir. 2010) ........................................................4

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021) ...................................................................20

*Succar v. Ashcroft*,
    394 F.3d 8 (1st Cir. 2005) ..........................................................19

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .......................23

*Turner v. U.S. Attorney General*,
    130 F.4th 1254 (11th Cir. 2025).................................................18

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020) ..........................................................9

*Webster v. Doe*,
    486 U.S. 592 (1988) .....................................................................8

*Zheng v. Gonzales*,
    422 F.3d 98 (3d Cir. 2005).................................................... 19, 20

# STATUTES

5 U.S.C. § 701(a)(2) .................................................................................8

8 U.S.C. § 1158(a)(2)(B) ..........................................................................26

8 U.S.C. § 1182(d)(5)(A) ............................................. 3, 7, 8, 13, 18

8 U.S.C. § 1182(d)(5)(B) ................................................................ 12, 13

8 U.S.C. § 1182(d)(5)(C) ..........................................................................7

8 U.S.C. § 1225 .......................................................................................21

8 U.S.C. § 1225(b)(1)(A)(i) ....................................................................21

8 U.S.C. § 1225(b)(1)(A)(ii) ...................................................................25

8 U.S.C. § 1225(b)(1)(A)(iii) ..................................................................18

8 U.S.C. § 1225(b)(1)(A)(iii)(II) .............................................................16

8 U.S.C. § 1229a .....................................................................................25

8 U.S.C. § 1252(a)(2)(B) ...........................................................................3

8 U.S.C. § 1252(a)(2)(B)(ii) ..................................................................3, 4

8 U.S.C. § 1252(a)(2)(B)(ii)(II) ..............................................................17

8 U.S.C. § 1252(b)(1)(A)(iii)(II) .............................................................17

8 U.S.C. § 1255(a) ...................................................................................19

# FEDERAL REGULATIONS

8 C.F.R. § 208.14(c)(4)(ii) .......................................................................21

8 C.F.R. § 208.30 .....................................................................................25

8 C.F.R. §§ 208.30(c)-(f)................................................................25

8 C.F.R. § 208.30(d)(4)................................................................25

8 C.F.R. § 208.30(g)....................................................................25

8 C.F.R. § 212.5(c)......................................................................14

8 C.F.R. § 212.5(d)......................................................................14

8 C.F.R. § 212.5(e)......................................................................13

8 C.F.R. § 212.5(e)(2)(i)..............................................................21

8 C.F.R. § 235.3(b)(4).................................................................25

8 C.F.R. § 235.3(b)(6).................................................................21

8 C.F.R. § 1208.2(b)...................................................................25

8 C.F.R. § 1208.30(g).................................................................25

## PUBLIC LAW

Pub. L. No. 119-1 § 3(d)(2)............................................................7

## INTRODUCTION

The prior Administration created a series of categorical programs that allowed hundreds of thousands of aliens to obtain parole. Secretary Noem acted to terminate those categorical programs, and on that basis also ended the parole terms of the class members. The statute expressly reserves parole termination to the "opinion" of the Secretary. Yet the district court nonetheless overrode that determination, finding that the Secretary was required to analyze on an individualized basis the circumstances surrounding the hundreds of thousands of parolees, and that her reasoning for the categorical termination was legally flawed.

Not surprisingly, the Supreme Court stayed that order pending appeal and certiorari (if needed). Plaintiffs astonishingly ask the Court "not to assign meaning to" the Supreme Court's stay, Resp. Br. 2, even though that decision necessarily means that a majority of the Supreme Court concluded that the government will likely succeed on the merits of its appeal, that the government will be irreparably harmed absent an injunction, and—as the dissent discussed at length—that the equities favor the government. This Court should reject Plaintiffs' invitation to disregard the Supreme Court's order, and should proceed instead to reverse.

Plaintiffs' arguments in defense of the district court's order lack merit. At the threshold, they fail to avoid the two applicable bars on judicial review of the parole terminations. For one, parole termination is expressly specified to fall within the

Secretary's discretion, and the INA shields such discretionary determinations from judicial review. For another, the APA itself precludes review of decisions that are committed to agency discretion by law, and parole termination is a classic example. To avoid these bars, Plaintiffs pretend they are challenging something other than a parole termination, but there is nothing else here. This is not a collateral challenge or a "process" challenge—it is a straight-up attack on the Secretary's determination to terminate parole, including by challenging her analysis as insufficiently reasoned and overly categorical. Those claims are beyond the scope of judicial review.

In any event, they also fail on the merits. The statute provides that parole can only be *granted* on a case-by-case basis, but includes no such limit on *termination* of parole—which makes perfect sense, because it is easy to imagine situations where the grounds for parole would evaporate for an entire group of aliens. Indeed, this is such a case: Secretary Noem disagreed with Secretary Mayorkas's determinations on whether parole was categorically appropriate; as a consequence, the predicate for *all* of the class members' parole terms was withdrawn. Nor did the Secretary err by adding the point that expedited removal might become unavailable if the parolees are permitted to remain in the United States for longer periods. In arguing otherwise, Plaintiffs ignore a Supreme Court decision from just last month, and try to read their own policy views into a statute that does not embrace them.

For all of these reasons, this Court should reverse the order below.

**ARGUMENT**

## I.    The Parole Terminations Are Not Reviewable.

Reversal is warranted for the threshold reason that the Secretary's decisions to terminate parole are not subject to judicial review. In arguing otherwise, Plaintiffs mischaracterize both the law and the nature of their own challenge.

### A.    The INA deprives the district court of jurisdiction.

The statute vests the Secretary with the discretion to terminate parole; she may do so whenever it is her "opinion" that the purposes of the parole "have been served." 8 U.S.C. § 1182(d)(5)(A). That determination is barred from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes review of any decisions specified in the statute as being within the Secretary's discretion. And Plaintiffs' challenge here is to the termination of their parole. Review is thus unavailable.

Plaintiffs invoke the presumption of judicial review (Resp. Br. 22-23), but that presumption is overcome by "specific language" in a statute. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984)). Here, the language "no court shall have jurisdiction to review" is about as specific as language gets—and this bar applies "notwithstanding any other provision of law." 8 U.S.C. § 1252(a)(2)(B). The INA thus clearly precludes review of discretionary determinations like the decision that parole should be terminated. *Cf. Kucana v. Holder*, 558 U.S. 223, 247–48 (2010).

3

Plaintiffs correctly recognize that the Secretary has discretion to decide whether the "purposes" of parole "have been served"—and thus that courts cannot review those determinations. *See* Resp. Br. 25. They insist their suit does not challenge any such determination. But their efforts to recharacterize their own action fail.

*First*, Plaintiffs cite cases where courts reviewed claims challenging broader "practices" or "procedures" distinct from the discretionary decisions themselves. *See* Resp. Br. 23-24; *e.g.*, *Samirah v. Holder*, 627 F.3d 652, 663 (7th Cir. 2010) (reviewing claim alleging failure to follow DHS regulation that limited its own discretion). Even if those claims were reviewable, Plaintiffs' claims here are not of that type. There is no overarching practice or procedure here that is separate and distinct from the parole terminations themselves. The "decision or action" that Plaintiffs have challenged, 8 U.S.C. § 1252(a)(2)(B)(ii), *is* the decision to terminate their parole—not some independent practice or procedure that led to it.

*Second*, Plaintiffs maintain that they "do not challenge" the Secretary's determination to terminate their parole, but rather her "failure to abide by non-discretionary limits on her parole authority." Resp. Br. 25. That is not a coherent dichotomy; it would entirely defeat the judicial-review bar. On Plaintiffs' view, any discretionary determination could be subjected to review simply by asserting that

the Secretary exceeded her "authority" by making that determination. That is not a tenable interpretation of the statute, and Plaintiffs cite no authority for it.

Examining the two ways in which the Plaintiffs claim the Secretary supposedly exceeded her authority only highlights the problem. Plaintiffs argue that the Secretary failed to comply with the APA's requirement of reasoned decision-making by resting on an allegedly mistaken view of the availability of expedited removal. But if alleging an APA violation were enough to render a discretionary determination reviewable, the review bar would never apply: Every plaintiff challenging such a decision can (and does) argue that the decision was arbitrary or capricious in some respect. Treating that as an exception to § 1252(a)(2)(B)(ii) would swallow the rule entirely.

Plaintiffs also argue that the Secretary exceeded her termination authority by exercising it as to a class of parolees rather than on a case-by-case, individualized basis. As explained further below, nothing in the statute requires case-by-case terminations, and such a rule would be particularly perverse in this context, where the prior Administration provided for parole on categorical, country-wide bases. *See infra* § II(A). Regardless, this is not a way around the review bar either. At its core, Plaintiffs' claim is that the Secretary abused her discretion by using common reasons to determine that the "purposes of such parole had been served" for all CHNV parolees. But the analysis that went into the Secretary's determination is undeniably

5

at the heart of the decision to terminate parole that Congress specified to be in the Secretary's discretion. If an argument that a parole termination was not sufficiently individualized—that is, that the decision did not sufficiently "attend … to the reasons [the] individual alien received parole," A021—were enough to overcome the judicial-review bar, the bar would have no meaning. This case is no different. A bar that precludes review only if a court finds the discretion to be properly exercised is no bar at all. *Cf. Garland v. Aleman Gonzalez*, 596 U.S. 543, 554 (2021).

Tellingly, Plaintiffs appear to agree that the Secretary's *individual* parole-termination decisions are not judicially reviewable. Resp. Br. 25. Left unexplained is why such a decision would become reviewable if it applies to more than one alien. Under Plaintiffs' logic, had the Secretary issued separate notices terminating each alien's parole—with no explanation whatsoever—that would be unreviewable.[1] Yet, under Plaintiffs' view, those determinations become reviewable when combined and published in a Federal Register notice explaining in detail the common reasons for terminating parole, with explicit consideration of reliance interests. Nothing in the statute remotely suggests that Congress intended such a backwards scheme.

Finally, Plaintiffs point to *Biden v. Texas*, 597 U.S. 785 (2022), and the new Laken Riley Act to argue that some judicial review is available in the parole context.

---

[1] Indeed, here, the Secretary *did* transmit to each CHNV parolee an "individual notice through the [alien's] USCIS online account." A054; *see also* Appx. 621.

Resp. Br. 25-26. Neither authority helps them here; actually, both confirm that there should be no judicial review of the Secretary's actions here.

In *Biden v. Texas*, the Supreme Court emphasized the Secretary's discretion in enforcing the federal immigration laws, and reversed a decision that intruded on that discretion. In laying out the discretionary options available to the agency in dealing with unlawful migrants, the Court observed that the INA "expressly authorizes" grants of parole, albeit in a "not unbounded" fashion. 597 U.S. at 806-07. The Court said nothing about the availability of judicial review over the Secretary's decisions to grant parole, much less to terminate parole.

As for the Laken Riley Act, it contemplates judicial review of whether the government is complying with the "limitation … that parole solely be granted on a case-by-case basis and solely for urgent humanitarian reasons or a significant public benefit." Pub. L. No. 119-1 § 3(d)(2) (Jan. 29, 2025) (codified at 8 U.S.C. § 1182(d)(5)(C)). If anything, that shows that Congress was concerned about the type of categorical parole programs that the Secretary terminated here. Congress's desire to better enforce the *restrictions* on *granting* parole does not somehow mean that decisions to *terminate* parole are subject to judicial review.

In sum, the challenged decision is the termination of parole, the authority for which is committed to the Secretary's discretion by the language of the statute. The Court need not determine whether "any other decision the Secretary makes regarding

parole" is immune from review, *see* Resp. Br. 26, to conclude that *this* decision may not be judicially reviewed. And that alone suffices for reversal.

### B.    The APA also forecloses review.

The parole terminations are also independently shielded from review under the APA as "agency action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2); Gov't Br. 29-32. Section 1182(d)(5)(A) vests the Secretary with authority to end parole whenever "the purposes of such parole shall, *in [her] opinion*, … have been served." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The statute thus makes the Secretary's *opinion* the touchstone. Reviewing courts cannot know better than the Secretary herself what her own opinion is. That phrasing thus "fairly exudes deference" to the Secretary and looks just like other statutes that commit a decision to agency discretion. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13-14 (2024) (same, for statute providing Secretary may revoke visa approval "for what he deems to be good and sufficient cause");[2] *Webster v. Doe*, 486 U.S. 592, 600 (1988) (same, for statute providing official may fire employee when he "shall deem such termination necessary or advisable"). "Short of permitting cross-examination of the [Secretary]

---

[2] Plaintiffs cite *Bouarfa* as if it favors them, but *Bouarfa* held that "Congress stripped federal courts of jurisdiction to review" discretionary decisions and concluded that visa-revocation decisions are discretionary because they rest on whether the Secretary concludes there is cause to revoke a visa. *Id.* at 13-15. *Bouarfa* strongly supports the government, not Plaintiffs.

concerning [her] views," there is "no basis on which a reviewing court could properly assess" her decision. *Webster*, 486 U.S. at 600.

The phrasing of the statute, and Supreme Court precedent interpreting similar statutes, thus forecloses Plaintiffs' argument that "prior actions creating the CHNV process," "the parole statute, the expedited removal statute, DHS regulations, and the APA" provide "law to apply." Resp. Br. 30. None of those sources cabins the Secretary's "opinion" as to whether and when to terminate parole.

The agency's "prior actions creating the [CHNV] parole process" did not purport to constrain future discretion to terminate parole or provide guidelines for its exercise; instead, they provided that parole could be terminated "at any time." Gov't Br. 3 & n.2. The parole statute leaves termination to the Secretary's opinion, as discussed, which is not a judicially reviewable standard. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The expedited removal statute is relevant only to Plaintiffs' claim that the Secretary misunderstood it; that statute does not itself discuss parole terminations or provide any restrictions on that power. Regulations might provide "law to apply" in certain contexts, but Plaintiffs' claims here do not seek to enforce any regulations.[3] As for the APA, the whole point of § 701(a)(2)'s

---

[3] Plaintiffs asserted below that the Secretary failed to comply with regulations requiring "written notice." Appx. 581-82. In fact, written notice was provided by both the Federal Register and individual notices to the parolees' online accounts. The district court did not grant relief on this claim, and it is not properly before this Court.

carve-out is to exclude acts committed to agency discretion from APA review. *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21 (1st Cir. 2020).

Plaintiffs' primary point appears to be that the question *whether* the Secretary may terminate parole of multiple parolees at once is not a challenge to the Secretary's "opinion" and is not committed to agency discretion by law. But the answer to that abstract legal question makes no difference to the class's legal rights unless Plaintiffs can further demonstrate that the decision to terminate parole is substantively unlawful. What matters is the underlying termination decision, not whether it is published in a single notice or in hundreds of thousands of separate notices. And even assuming the Court may review whether the Secretary exceeded her statutory parole termination authority by not engaging in "case-by-case" review (she did not, *see infra* § II(A)), that still would not support the district court's "arbitrary-and-capricious" review of the rationales for the Secretary's substantive opinion that the purposes of parole of have been served. *See* A031-A035.

## II.    The Parole Terminations Were Lawful.

Even if the Court could reach the underlying merits, Plaintiffs still fail to establish any likelihood of success. The parole statute does not require parole terminations to be made on a case-by-case basis—and such a requirement would be particularly inappropriate in dealing with grants of parole that were facilitated by categorical, country-wide determinations by the prior Administration. The Secretary

also appropriately considered the availability of expedited removal; Plaintiffs both misread the statute and draw the wrong conclusion from their own reading.

## A.    Parole terminations need not be individualized.

On the merits, Plaintiffs' argument hinges on their incorrect contention that the parole statute imposes a "case-by-case" requirement on parole terminations. That is simply false. The statute provides parole may be *granted* only on a "case-by-case" basis, but it contains no parallel language imposing that requirement on terminating parole. Gov't Br. 32-35. And certainly nothing in the INA precludes the Secretary from establishing generally applicable criteria to guide her exercise of discretion. Imposing a case-by-case requirement would perversely mean that although the previous Administration used common reasons to categorically determine that the prerequisites for *granting* parole were met for large groups, this Administration cannot use common reasons to *terminate* those very grants of parole. This Court should reject that untenable one-way-ratchet interpretation of the statute.

Like the district court, Plaintiffs rely on the statute's use of the singular to support their argument that termination must be done on a case-by-case basis. Resp. Br. 33-34. But that does not carry the weight they contend: statutes are often written in the singular, without any inference that class-wide decisions are forbidden. *See* Gov't Br. 34-35. Plaintiffs appeal generally to context and the statute "as a whole," Resp. Br. 33, but never identify what statutory text or context compels imposing a

11

"case-by-case" requirement on parole terminations. If anything, the statute "as a whole" proves that Plaintiffs are wrong: where Congress wanted to emphasize that an inquiry must attend to individualized reasons, it did not rely solely on the use of the singular form but instead expressly said so. *See* 8 U.S.C. § 1182(d)(5)(B) (providing that refugees may not be paroled unless there is a determination as to compelling reasons in the public interest "with respect to that particular alien"). Indeed, Plaintiffs' reading would render Congress's insertion of the "case-by-case basis" language superfluous. Plaintiffs respond that the 1996 amendments changed other language too, but that does not undermine the government's point—the text they claim is key, the singular "alien," is identical before and after the amendment. *See* Resp. Br. 36. If the singular form alone were sufficient to require a "case-by-case" analysis, Congress would not have needed to add the "case-by-case" language.

Plaintiffs' reading of the singular form to require case-by-case determinations also proves too much, as such a strict reading would preclude the agency from issuing categorical rules to govern adjudications. Gov't Br. 34; *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (holding that statute giving Bureau of Prisons discretion to grant early release permitted it to "exclude inmates either categorically or on a case-by-case basis"); *Muniz v. Sabol*, 517 F.3d 29, 36 (1st Cir. 2008) (requiring a "clear expression of Congressional intent" before concluding that a statute foreclosed "the possibility of a categorical exercise of discretion"). Plaintiffs' argument in

12

response—that the Secretary did not engage in "rulemaking" here, Resp. Br. 35—misses this point, which is about the problematic implications of Plaintiffs' reading of the statute. In any event, what the Secretary did here was not different in kind: She announced generally applicable criteria which were then used to terminate the parole of CHNV parolees, each of whom was provided individualized notice of that termination via their USCIS online accounts. A054.

Plaintiffs' other arguments in favor of case-by-case treatment are equally unpersuasive. In attempting to blend grants with terminations, they observe (Resp. Br. 37) that the statute does not use the word "grant" or "terminate." That is a *non sequitur*. The INA provides that the Secretary may "in [her] discretion *parole* into the United States temporarily under such conditions as [s]he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Everyone understands that "parole" in that sentence means "grant parole." Likewise, the statute provides that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id.* Again, "return" to

"custody" clearly means "terminate parole." *Cf.* 8 C.F.R. § 212.5(e). Plaintiffs cannot evade that the latter clause lacks any "case-by-case" requirement.[4]

Next, Plaintiffs suggest that a parole termination decision must necessarily be individualized because the Secretary must consider whether the individualized basis for the grant of parole has been served. *See* Resp. Br. 37-39. That is simply incorrect. For example, a lack of detention capacity may induce DHS to parole a certain subset of aliens who, based on a case-by-case review, are deemed least likely to endanger the community. *Cf. Biden*, 597 U.S. at 815-16 (Kavanaugh, J., concurring). But once a new detention facility becomes available, the purposes of parole necessarily would have been served for *all* such aliens paroled due to the lack of detention capacity. Or, to use another example, if there is a civil war in a foreign nation that poses a humanitarian threat, the Secretary might grant parole on a case-by-case basis to the aliens who are vulnerable to that threat. But once the civil war ends, the Secretary could conclude that the purposes of parole have been served. It therefore makes good

---

[4] Plaintiffs also suggest—without citation or explanation—that the Secretary's action here did not *terminate* parole, but merely revised the "conditions" of parole by changing its expiration date, and therefore remained bound by the case-by-case requirement that attends to parole grants. *See* Resp. Br. 37. But the Secretary's decision *ended* parole for existing parolees. A052 (the parole "will terminate"); *see also* Order Denying Stay, No. 6718623, at 1 (May 5, 2025) (stating it is undisputed that the Secretary "terminated" parole). The ending of parole cannot be understood as a new "condition" of parole. *Cf.* 8 C.F.R. § 212.5(c), (d) (treating "conditions" separately from "termination"). Even Plaintiffs themselves refer to the Secretary's decision as a mass "termination." Resp. Br. 35, 41.

sense for Congress to require parole be granted on a case-by-case basis but permit it to be terminated on a categorical basis.

This case is actually a perfect example—and shows why Plaintiffs' reading is unacceptable. Here, Secretary Mayorkas's categorical criteria (such as countrywide humanitarian reasons and the claimed benefit of reducing irregular migration) made parole presumptively available to a huge swath of aliens. To be sure, those aliens still had to satisfy certain case-by-case evaluations, to ensure they fell within those categories and to ensure they did not pose a public safety threat. But the predicate for their parole was Secretary Mayorkas's categorical determinations regarding the reasons for parole. Secretary Noem then determined that those categorical reasons no longer justified parole—and that finding necessarily applies to *all* CHNV parolees. Secretary Noem exercised her authority to terminate the edifice upon which all of these grants of parole had rested—of course the consequence was categorical.

It would be bizarre to fault Secretary Noem for *terminating* parole by applying categorical factors when Secretary Mayorkas *granted* parole by applying categorical factors. This is not mere whataboutism, *contra* Resp. Br. 39, but it does illustrate the perversity of the dynamic Plaintiffs endorse, in which the Secretary cannot terminate

parole based on her assessment that the categorical reasons relied on by the prior Administration to grant parole now fail to justify those parole grants.[5]

**B.    The parole terminations are not arbitrary or capricious.**

One of several reasons the Secretary gave for terminating CHNV parole rather than allowing parolees' two-year terms to naturally expire was that the latter course "would increase the likelihood that th[ose aliens] would accrue more than two years of continuous presence in the United States" and thereby preclude use of expedited removal under § 1225(b)(1)(A)(iii)(II). A053-A054. This rationale amply supports the Secretary's decision under the APA's deferential standard of review.

At the outset, though, even if the Secretary had erred about the applicability of expedited removal, her decision to terminate CHNV parole—including by terminating existing grants of parole—was well supported by independent reasons. *See* Gov't Br. 39-40. Plaintiffs argue that the reasons for terminating the CHNV parole programs had "nothing to do" with the decision to terminate existing CHNV parole grants. Resp. Br. 46. Common sense says otherwise; so does the structure and substance of the Federal Register notice. That notice explains that "one aspect of" the termination of the CHNV parole programs is the termination of existing parole grants. A052. The Secretary expressly referenced those reasons for terminating the

---

[5] The government has not changed its position on this issue or any others; none of the ostensible differences in the government's briefing—filed in different postures in different courts—suggests otherwise. *See* Resp. Br. 39 n.22.

programs—including their "domestic impact"—as the same reasons underlying the decision that the purposes of CHNV parole grants have been served. *See* A054 n.70. Indeed, several reasons for terminating the parole programs specifically apply to existing parolees. *See* A048 (addressing concern that parolees impose costs due to eligibility for public benefits), A050 (discussing "significant gaps" in vetting for CHNV parolees). Thus, although the Secretary included additional analysis favoring terminating existing parole grants rather than letting them expire, that discussion does not provide the sole reason for terminating existing parole grants. And the fact that the Secretary directed that the different aspects of her decision be treated as "severable" (Resp. Br. 37) does not mean that they do not rest on certain common reasons.

In any event, the Secretary's rationale was legally correct. The context and text of § 1252(b)(1)(A)(iii)(II) indicates that DHS may subject to expedited removal aliens who were paroled in the past but who no longer have parole, so long as they have not been in the country for more than two years. Gov't Br. 37-38. The provision uses the present perfect tense ("has not been ... paroled"), which (as the Supreme Court just reiterated) "by definition focuses on the *present.*" *Hewitt v. United States*, No. 23-1002, 2025 WL 1758501, at *6 (U.S. June 26, 2025) (emphasis in original); *see also id.* at *5-7 (sentence "has not been imposed" if defendant was sentenced earlier, but the sentence was later vacated). Section 1252(b)(1)(A)(iii)(II)'s language

17

focuses on whether someone *presently* has permission to be within the United States; if not, and if that person has been in the country continuously for less than two years prior to the date of the determination of inadmissibility, then expedited removal is available. That means the Secretary was right to be concerned that allowing CHNV parolees to remain in the country until expiration of their parole terms would impede the government's ability to use that expedited removal provision against them following such expiration.

Plaintiffs argue, as the district court concluded, that CHNV parolees are not properly subject to expedited removal under § 1225(b)(1)(A)(iii), interpreting the language "has not been admitted or paroled into the United States" to "categorically" immunize any alien who has ever been paroled, for any length of time, from expedited removal. Resp. Br. 42. That interpretation is incorrect.

Plaintiffs do not dispute that the present perfect tense can be, and is often, used to reflect a "state that continues into the present." *Turner v. U.S. Attorney General*, 130 F.4th 1254, 1261 (11th Cir. 2025). Instead, Plaintiffs posit that such a reading here is "nonsensical[]" because, they say, Congress "clearly" intended that clause (A)(iii) only apply to those who did not initially enter the United States with permission. Resp. Br. 43-44. But a grant of parole, which is a *release* mechanism, is not the equivalent of entering with permission. *See* 8 U.S.C. § 1182(d)(5)(A) (explaining that "such parole shall not be regarded as an admission of the alien").

In any event, Plaintiffs point to no statutory context demonstrating that Congress clearly intended that clause (A)(iii)(II) would not apply to those whose parole has ended. Nor does the government's reading of the phrase "has not been … paroled" render "meaningless" the limits in § 1225(b)(1)(A)(iii)(II). Instead, this provision authorizes the Secretary to subject to expedited removal those who are unlawfully present in the United States, unless they have accrued two years or more of continuous presence within the country. Plaintiffs provide no reason to conclude that Congress meant to permanently exclude from expedited removal all aliens who were temporarily paroled for any time. So long as an alien retains parole, he cannot be numbered among those designated for expedited removal under § 1225(b)(1)(A)(iii)(II). But Congress erected no barrier to expedited removal of those whose parole is terminated or expired and who have not left the country. And it makes sense that someone who is temporarily paroled—*e.g.*, to testify in a trial—but who does not leave upon expiration or revocation of their limited parole term could be subjected to expedited removal under this provision, provided they have not accrued two years of continuous physical presence.

If Congress wanted to distinguish in § 1225(b)(1)(A)(iii)(II) between those who were once paroled and those who were not, it could have used the past tense "was paroled." *See Hewitt*, 2025 WL 1758501, at *7 (noting that, in other provisions of the same act, Congress used simple past tense to convey events that occurred in

19

the past as contrasted to its use of present perfect in other contexts). For example, in 8 U.S.C. § 1255(a), Congress provided that the Attorney General may adjust the status of an alien who "was inspected and ... paroled into the United States" and meets other eligibility requirements. 8 U.S.C. § 1255(a); *Succar v. Ashcroft*, 394 F.3d 8, 16 (1st Cir. 2005). As contrasted to the present perfect, the past tense is more likely to indicate an alien who was, in the past, paroled, regardless of whether he continues to have parole at the time of his adjustment application. *See Zheng v. Gonzales*, 422 F.3d 98, 121 (3d Cir. 2005) (noting that use of *past* tense "does suggest that DHS might be unable to terminate adjustment eligibility simply by revoking parole"); *cf. Sanchez v. Mayorkas*, 593 U.S. 409, 411-412, 415 (2021) (describing § 1255's "was inspected and admitted or paroled" clause as part of a "legal-entry requirement").

Plaintiffs complain that the government's construction of the statute leaves in the government's hands whether a paroled alien could be subject to expedited removal because the government may choose to revoke parole. Resp. Br. 43. But there is nothing incongruous about that result. It is in line with the context and statutory scheme governing parole, under which parole is a discretionary, temporary release into the interior of the United States during which the alien remains constructively at the border. *Leng May Ma v. Barber*, 357 U.S. 185, 188-190 (1958). At the end of the parole grant, the alien's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8

U.S.C. § 1182(d)(5)(A). If DHS has the authority to terminate parole, then it has the authority to return the alien to the position he had before being paroled: an applicant for admission subject to expedited removal.

Plaintiffs are also incorrect to contend that DHS regulations contradict the government's interpretation. Various DHS regulations contemplate that those who have been paroled may be subject to expedited removal upon parole termination, including under § 1225(b)(1)(A)(iii)(II). For example, a regulation governing the actions to be taken by an asylum officer if an asylum application is to be denied provides for use of expedited removal to a paroled alien: for certain parolees, upon denial of the asylum application, "the asylum officer shall proceed in accordance with § 235.3(b) of this chapter." 8 C.F.R. § 208.14(c)(4)(ii). As another example, the same regulation upon which Plaintiffs rely—8 C.F.R. § 235.3(b)(6)—establishes a process for the termination of the alien's parole, thus envisioning a possibility that such an alien could be subject to expedited removal. *Id.* ("If the alien establishes that he or she was ... paroled ... the case will be examined to determine ... whether such parole has been, or should be, terminated...."). And, as already noted, the parole termination regulation contemplates the use of expedited removal after termination of parole. 8 C.F.R. § 212.5(e)(2)(i) (after parole is terminated, "further inspection or hearing shall be conducted *under section 235* [8 U.S.C. § 1225] or 240 of the Act")

(emphasis added). In the end, although the language of the statute controls, the regulations also weigh in the government's favor.

Finally, Plaintiffs argue (Resp. Br. 45) that the Secretary's rationale was faulty because, under DHS's view, aliens whose parole has ended are also subject to expedited removal under § 1225(b)(1)(A)(i), which applies to certain inadmissible aliens who are "arriving in the United States," even if they have already been in the country for more than two years. Notably, however, Plaintiffs disagree that this provision applies, attacking the government's application of this provision to former parolees as "grammatically nonsensical." Resp. Br. 45. Although Plaintiffs are incorrect, this disagreement about the applicability of § 1225(b)(1)(A)(i) only underscores the reasonableness of the Secretary's rationale. By safeguarding the ability to rely on § 1225(b)(1)(A)(iii)(II) as an authority for invoking expedited removal against parolees, the Secretary "preserves the ability to initiate expedited removal proceedings to the maximum extent possible," A053.[6]

## III.   The Equitable Factors Favor The Government.

In issuing a stay, the Supreme Court weighed the equities and harms at issue and necessarily determined that the "equity balance weighs in the Government's favor" at this stage. *See Noem v. Doe*, 24A1079, 2025 WL 1534782, at *4 (U.S.

---

[6] Indeed, a lawsuit filed by Plaintiffs' attorneys challenges the applicability of *both* § 1225(b)(1)(A)(i) and (b)(1)(A)(iii)(II) to former parolees. *See Coal. for Humane Immigrant Rights v. Noem*, No. 1:25-cv-00872 (D.D.C.).

2025) (Jackson, J., dissenting). Plaintiffs can succeed on appeal only if this Court ignores the Supreme Court's ruling in this very case. In any event, the Court should not credit the district court's mistaken balancing of the equities, which improperly discounted the strong government and public interest in effectuating the Administration's immigration policies and placed undue weight on parolees' interest in an inherently discretionary and temporary benefit. *See* Gov't Br. 40-46.

The irreparable harm to the government and the public is acute. The relief the district court granted—had it not been stayed by the Supreme Court—would stymy the government's ability to terminate parole grants that the Secretary has determined undermine U.S. interests and thus inhibit the government's pursuit of its foreign policy goals. Gov't Br. 40-43. Plaintiffs ask the Court to dismiss these as harms as too "abstract," Resp. Br. 51, but the Supreme Court has just reiterated the irreparable harms inherent in broad injunctions like the one the district court entered that "prevent[] the Government from enforcing its policies" and that "likely exceed" judicial authority—here, because the district court ignored Congress's jurisdictional bars. *See Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *14-15 (U.S. June 27, 2025). The Executive Branch suffers harm when district courts intrude on core executive functions, such as managing the immigration system. *See Arizona v. United States*, 567 U.S. 387, 394-96 (2012); *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Moreover, the public

and the government suffer specific, concrete harms result from an order forcing the Executive Branch to allow hundreds of thousands of aliens to remain in the United States contrary to the Secretary's determination. And contrary to Plaintiffs' assertion (Resp. Br. 52), whether aliens can remain in the United States is indeed a foreign policy question. Allowing CHNV parolees who lack a path to a durable status to remain in the United States is inconsistent with the current Administration's foreign policy objectives, which include to "faithfully execute the immigration laws against all inadmissible and removable aliens," A049, and it can serve to encourage or incentivize further irregular migration, A050.

On the flip side, the class's claimed harms—all of which accrue from the termination of a benefit that they knew was temporary and was never guaranteed— do not establish irreparable injury, nor do they outweigh the harms to the government and the public. Plaintiffs point to the risk of removal as an irreparable harm, arguing that removal cannot "be remedied with money damages." Resp. Br. 48-49. But not all non-monetary harm is irreparable; after all, removal itself is "not categorically irreparable," even though it is a non-monetary harm. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And while a stated goal of the parole termination, as noted above, is to expeditiously remove aliens who lack a legal basis to remain in the United States, Plaintiffs ignore that this risk is not necessarily imminent for every class member. The Secretary also stated that DHS is not prioritizing for removal those with pending

24

applications for other immigration benefits. A053 ("DHS intends to prioritize for removal those who (1) have not, prior to the publication of this notice, properly filed an immigration benefit request ... and (2) are not the beneficiary of an immigration benefit request properly filed by someone else on their behalf...."). [7]

Further, contrary to Plaintiffs' misleading description (at 50 & n.27), the expedited removal process *does* afford class members the chance to "raise asylum or other protection claims." Class members who are processed for expedited removal and who indicate an intent to apply for asylum, a fear of persecution or torture, or a fear of return to their home country would be referred to a USCIS asylum officer for a "credible fear interview." *See* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. §§ 208.30, 235.3(b)(4). The alien may present evidence at the interview and may consult with a lawyer or another person prior to the interview. 8 C.F.R. § 208.30(d)(4). If the alien demonstrates a significant possibility that they could establish eligibility for asylum or other available protection from removal, he is generally placed in removal

---

[7] Although U.S. Citizenship and Immigration Services (USCIS) did temporarily pause adjudication of CHNV and certain other parolees' requests for other immigration benefits in February 2025 to conduct additional vetting to address massive fraud uncovered in CHNV parole applications, *see* Gov't Br. 12; Appx. 308-311, the district court stayed that adjudication hold, *see* Gov't Br. 12. As evidenced by declarations submitted in the district court, USCIS has worked diligently to implement the district court's order and is proceeding with adjudicating the previously-paused applications. *See* Dist. Ct. Dkt. Nos. 120, 124, 132, 139. USCIS recently reported that it had completed adjudication of almost 9,000 applications for immigration benefits by current or former CHNV and other parolees. *See* Dist. Ct. Dkt. No. 139-1.

proceedings under 8 U.S.C. § 1229a, where he may apply for asylum or other protection as a defense to removal. 8 U.S.C. § 1225(b)(1)(B)(ii), (v); 8 C.F.R. §§ 208.30(c)-(f), 1208.2(b). If the asylum officer determines that the alien has not met this screening standard, the alien may obtain review of that determination before an immigration judge. 8 C.F.R. §§ 208.30(g), 1208.30(g). The constitutionality and legality of this expedited removal screening process was upheld long ago by the D.C. Circuit in *American Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352 (D.C. Cir. 2000); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 138-140 (2020).

More fundamentally, Plaintiffs' assertion (*e.g.*, Resp. Br. 21, 53) that the district court's order would not prevent the government from terminating the parole of any individual respondent and initiating removal proceedings against him only underscores that the district court's order does not actually protect any *substantive* entitlement that any class member may have. Instead, the order simply serves to impose roadblocks to the government's efforts to enforce the immigration laws. That is not a cognizable harm, much less one that outweighs the government's strong interests in implementing the discretionary judgments that Congress entrusted to it.

In sum, the balance of the equities favors the government, as the Supreme Court tacitly found when granting a stay. *See Noem v. Doe*, 2025 WL 1534782, at *3-4 (Jackson, J., dissenting) (criticizing the majority for "determin[ing] that the equity balance weighs in the Government's favor").

## CONCLUSION

For these reasons, this Court should reverse the district court's decision.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BRIAN C. WARD
Acting Assistant Director

PATRICK GLEN
Senior Litigation Counsel

/s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
First Cir. Bar No. 1216699
Senior Litigation Counsel
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 598-8259
(202) 305-7000 (facsimile)
katherine.j.shinners@usdoj.gov

ELISSA FUDIM
*Trial Attorney*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,446 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word for Microsoft 365 in proportionally spaced Times New Roman 14-point font.

*s/ Katherine J. Shinners*
Katherine J. Shinners
Senior Litigation Counsel

## CERTIFICATE OF SERVICE

I, Katherine J. Shinners, Senior Litigation Counsel, hereby certify that on July 2, 2025, I filed the forgoing brief through the CM/ECF system, which will provide electronic service to the registered participants as identified on the Notice of Electronic Filing (NEF).

*s/ Katherine J. Shinners*
Katherine J. Shinners
Senior Litigation Counsel