No. 25-1384

IN THE

# United States Court of Appeals
# for the First Circuit

———————

SVITLANA DOE; MAKSYM DOE; MARIA DOE; ALEJANDRO DOE; ARMANDO DOE; ANA DOE; CARLOS DOE; OMAR DOE; SANDRA MCANANY; KYLE VARNER; WILHEN PIERRE VICTOR; HAITIAN BRIDGE ALLIANCE; ANDREA DOE; VALENTIN ROSALES TABARES; MARIM DOE; ADOLFO GONZALEZ, JR.; ALEKSANDRA DOE; TERESA DOE; ROSA DOE; MIGUEL DOE; LUCIA DOE; DANIEL DOE; GABRIELA DOE; NORMA LORENA DUS,

*Plaintiffs-Appellees,*

v.

KRISTI NOEM, in their official capacity as Secretary of Homeland Security; PETE R. FLORES, in their official capacity as Acting Commissioner of U.S. Customs and Border Protection; KIKA SCOTT, in their official capacity as the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services; DONALD J. TRUMP, in their official capacity as President of the United States; TODD LYONS, in their official capacity as the Acting Director of Immigration and Customs Enforcement,

*Defendants-Appellants,*

———————

On Appeal from the United States District Court
for the District of Massachusetts
1:25-cv-10495-IT, Hon. Indira Talwani

———————

**BRIEF OF *AMICI CURIAE***
**CITIES, COUNTIES, AND LOCAL GOVERNMENT LEADERS IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

*Amicus Curiae*, CITY OF BOSTON
Adam Cederbaum, Corporation Counsel
Samuel B. Dinning, Fir. Cir. No. 1215223
samuel.dinning@boston.gov
Thomas J. Broom, Fir. Cir. No. 1207623
thomas.broom@boston.gov
One City Hall Square, Room 615
Boston, MA 02201
(617) 635-4034

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ..................................................... 1

ARGUMENT ................................................................ 4

A. CHNV participants have been critical contributors to Local Government *Amici's* cities' and counties' economic vitality and successful provision of key services. ............... 6

B. CHNV participants' continued protection under the program is also essential to maintaining public safety in Local Government *Amici's* cities and counties. ................... 12

CONCLUSION ............................................................ 16

APPENDIX A – LIST OF AMICI CURIAE ............................... 20

# TABLE OF AUTHORITIES

STATUTES

8 U.S.C. § 1182(d)(5)(A)     2

OTHER AUTHORITIES

American Immigration Council, *Immigrants in the United States*     9

Andrew Moriarty, *Immigration Benefits All Americans and Strengthens the Economy*, FWD.us (Mar. 14, 2024)     8, 10

City of Boston Planning Department, Boston in Context: Neighborhoods     14

City of Boston, Mayor Michelle Wu's Opening Statement to the United States House Committee on Oversight (Mar. 10, 2025)     15

Hanna Love et al., *The path to public safety requires economic opportunity: Trends and solutions in urban, suburban, and rural communities*, Brookings Institution (Mar. 11, 2025)     15, 16

Institute for Community Health, *New Research: Already-Stretched Healthcare Workforce in Jeopardy with Deportation Threats* (Apr. 10, 2025)     10

International Rescue Committee, *What is humanitarian parole?* (Mar. 7, 2025)     7

Jeanne Batalova, *Immigrant Health-Care Workers in the United States*, Migration Policy Institute     10

Migration Policy Institute, "U.S. Immigrant Population by Metropolitan Area"     6

ii

Mohamad Moslimani & Jeffrey S. Passel, *What the data says about immigrants in the U.S.*, Pew Research Center (Sept. 27, 2024)    6

Molly Farrar, *'The city has never been safer': Boston records lowest murder rate since 1957, officials announce*, Boston.com (Dec. 29, 2024)    14

New American Economy, *Immigrants in the City and County of Denver: A Snapshot of the Demographic and Economic Characteristics of Immigrants*    9

Office of New Americans, *New Americans Data*, Colorado Department of Labor and Employment    8

Phillip Connor, *Industries with critical labor shortages added hundreds of thousands of workers through immigration parole*, FWD.us (Mar. 26, 2025)    8, 9, 11

Phillip Connor, *Survey data show the administration's parole policy for the Americas is a successful model for new legal pathways,* FWD.us (Jan. 25, 2024)    7

U.S. Customs and Border Protection, *CBP Releases August 2024 Monthly Update* (Sept. 16, 2024)    2

WCVB Channel 5 Boston, *Boston Police Commissioner Michael Cox on immigration laws and DEI*, YouTube (Feb. 16, 2025)    14

Yael Schacher, *Setting the Record Straight on CHNV*, Refugees International (Mar. 28, 2025)    11

iii

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are cities, counties, and local government leaders (Local Government *Amici*)[2] spread across the country. We respectfully submit this brief as *amici curiae*, in support of affirming the District Court's grant of Plaintiffs-Appellees' request for preliminary injunction, in this litigation challenging the presidential administration's decision to terminate all grants of parole under the program for Cuban, Haitian, Nicaraguan, and Venezuelan nationals.

Like the nation, *Amici*'s cities and counties were built with contributions from countless generations of immigrants from across the globe. These contributions have allowed Local Government *Amici*'s cities and counties and those who live in them to benefit from the vitality, resolve, and enthusiasm of all those seeking the American dream. Local Government *Amici*'s cities and counties are enriched by people from all

---

[1] Pursuant to Fed. R. App. P. 29(a), this Court has granted leave to file this brief. No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund its preparation or submission. No person other than the *amici* or their counsel made a monetary contribution to the preparation or submission of this brief.

[2] A complete list of *amici* is set forth in the appendix.

1

over the world who have shared their diverse perspectives, cultures, languages, and religions in making our cities and counties their homes. And for generations, immigrant families have added to the rich fabric of Local Government *Amici*'s cities and counties by enrolling their children in our schools, engaging in and strengthening our communities, and working across our diverse economies.

Among those who have contributed to the richness of Local Government *Amici*'s cities and counties are many of the more than 530,000 participants in the humanitarian parole program authorized by 8 U.S.C. § 1182(d)(5)(A) and extended to nationals from Cuba, Haiti, Nicaragua, and Venezuela (the CHNV parole program).[3] Without the contributions of these individuals, our robust economies, high quality of life, and safe communities would not be possible. Put differently, members of Local Government *Amici*'s cities' and counties' immigrant communities, and participants in the CHNV parole program in particular, are integral to the flourishing, growth, and vitality of our jurisdictions.

---

[3] U.S. Customs and Border Protection, *CBP Releases August 2024 Monthly Update* (Sept. 16, 2024), archived at https://perma.cc/P2JC-BZEJ.

This is especially true when it comes to the provision of critical services, whether in the private sector or by government, where participants in the CHNV program have been essential drivers. Participation in the program also entails work authorization, and many parole participants have used their authorizations to work in sectors inextricably intertwined with the health, success, and growth of Local Government *Amici*'s cities and counties and their economies.

Similarly, the CHNV program allows *Amici*'s cities' and counties' residents, no matter their immigration status, to help keep our communities safe. The program's legal protections are essential to promoting trust between residents and law enforcement, which is the bedrock of public safety. The sudden termination of the CHNV program and directive to program participants to leave their jobs and the country within 30 days, by contrast, only serves to sow fear, and makes it harder for first responders to develop relationships with the communities they serve.

From keeping our buildings pristine and operational to staffing critical roles in our healthcare sectors, from providing hot meals at public school cafeterias and lunch counters to contributing to and enhancing

public safety near their homes, CHNV program participants' labor, resolve, and commitment to their neighbors have been critical to our cities' and counties' success.

And yet on March 25, 2025, the Department of Homeland Security summarily ended this program, terminating beneficiaries' work authorization with just 30 days' notice, and directing them to leave the country, no matter the homes they would leave behind, the families they would have to be separated from, or the important jobs that would suddenly be left unfilled. As this termination would have direct negative impacts on Local Government *Amici*'s cities' and counties' neighborhoods, economies, and safety, this Court should affirm the District Court's imposition of a preliminary injunction halting the *en masse* termination of the CHNV parole program until this litigation is resolved on the merits in the District Court.

## ARGUMENT

On April 8, 2025, Plaintiffs-Appellees filed their request for an emergency injunction to halt Defendants-Appellants' unlawful termination of the CHNV parole program. On April 14, 2025, the District Court granted their motion and enjoined the Defendants-Appellants from

4

wholly terminating the CHNV parole program, but the District Court allowed Defendants-Appellants to continue disqualifying individual participants from the program on a case-by-case basis. Defendants-Appellants timely appealed to this Court and sought a stay of the District Court's order pending their appeal. On May 5, 2025, this Court denied their motion for stay pending appeal. On May 8, 2025, they timely filed an application for a stay of the District Court's order with the U.S. Supreme Court. On May 30, 2025, the Supreme Court granted Defendants-Appellants' application and stayed the District Court's order pending a resolution on the merits of that order by this Court.

This Court is now presented with the question of whether the District Court abused its discretion when it imposed a preliminary injunction halting Defendants-Appellants' unlawful termination of the CHNV parole program. For the reasons outlined in Plaintiffs-Appellees' brief and as further set forth below, Local Government *Amici* ask this Court to temporarily preserve the CHNV parole program and affirm the District Court in recognition of the irreparable harm and damage to the public interest that would result from allowing Defendants-Appellants to

proceed with their wholesale, unlawful dismantling of the CHNV parole program during this litigation.

**A.    CHNV participants have been critical contributors to Local Government *Amici's* cities' and counties' economic vitality and successful provision of key services.**

Nearly two-thirds of America's foreign-born population live in the nation's 20 largest metropolitan areas, including many of the Local Government *Amici*'s cities and counties.[4] Indeed, immigrants bring their gifts to localities of all sizes.[5] While all members of our communities have offered their unique contributions and enriched our neighborhoods, CHNV parole program participants in particular have been a boon to Local Government *Amici*'s cities' and counties' economies by, among other things, working in key fields that provide the services many may take for granted, but which are essential to our way of life.

The CHNV parole program offers the right not only to live in the United States, but to work here, too. Under the program, eligible

---

[4] Mohamad Moslimani & Jeffrey S. Passel, *What the data says about immigrants in the U.S.*, Pew Research Center (Sept. 27, 2024), archived at https://perma.cc/5r6w-ckf7.

[5] Migration Policy Institute, "U.S. Immigrant Population by Metropolitan Area," available at https://www.migrationpolicy.org/programs/data-hub/charts/us-immigrant-population-metropolitan-area (last visited Apr. 25, 2025).

individuals from Cuba, Haiti, Nicaragua, and Venezuela, as well as their spouses and any qualifying children, may reside in the United States for up to two years and apply to work during that time.[6] Following a rigorous vetting process, which includes identifying a financial sponsor and other support, program participants have proven particularly successful in establishing homes, finding work, and integrating themselves into the very fabric of Local Government *Amici*'s cities' and counties' communities.[7] Indeed, participants in this program rapidly establish their economic self-sufficiency through their gainful employment and support from their sponsor.[8]

The substantial benefits of CHNV participants' economic contributions flow to all of Local Government *Amici*'s cities' and counties' residents. Simply from an economic perspective, studies have consistently shown that immigrants to the United States generally are

---

[6] Phillip Connor, *Survey data show the administration's parole policy for the Americas is a successful model for new legal pathways,* FWD.us (Jan. 25, 2024), archived at https://perma.cc/984V-QTMX; International Rescue Committee, *What is humanitarian parole?* (Mar. 7, 2025), archived at https://perma.cc/HS97-C27P.

[7] *Id.*

[8] *Id.*

more likely to be of working age, which helps Local Government *Amici*'s cities and counties fill gaps in our respective labor markets.[9] For example, in Colorado, home to *Amicus* City and County of Denver, more than 80% of foreign-born residents are working age.[10]

CHNV program participants have been particularly helpful to *Amici*'s cities and counties by choosing to work in sectors that have persistently experienced labor shortages in recent years. From healthcare, construction, leisure, and hospitality, to manufacturing, wholesale, retail trade, business, transportation, and education, these sectors, and the residents of Local Government *Amici*'s cities and counties, have benefited from the nearly quarter-million CHNV parolees who have helped bridge labor force gaps.[11] In the City and County of Denver, more than 23% of employees in the transportation, warehousing,

---

[9] Andrew Moriarty, *Immigration Benefits All Americans and Strengthens the Economy*, FWD.us (Mar. 14, 2024), archived at https://perma.cc/37RU-DJ9T.

[10] Office of New Americans, *New Americans Data*, Colorado Department of Labor and Employment, archived at https://perma.cc/6KFS-G5L5 (last visited Apr. 25, 2025).

[11] Phillip Connor, *Industries with critical labor shortages added hundreds of thousands of workers through immigration parole*, FWD.us (Mar. 26, 2025), archived at https://perma.cc/PT7D-KSFE.

and food sectors are immigrants, as are more than 11% of employees in the healthcare sector.[12] And while the focus of this brief is the CHNV program, it is also important to recognize that, across all parole programs authorized by Congress and created by the Department of Homeland Security, approximately 740,000 participants have been valuable economic contributors over the last four years.[13] CHNV program participants in *Amici*'s cities and counties have thus directly supported our local economies, which may have otherwise faced important shortages or failed to bounce back as quickly following the COVID-19 pandemic.[14]

For instance, immigrants have been essential in helping to lessen the burdens on an overstretched healthcare system in the aftermath of the pandemic. At a time when the pandemic strained our national healthcare system, newly arrived immigrants—particularly those

---

[12] New American Economy, *Immigrants in the City and County of Denver: A Snapshot of the Demographic and Economic Characteristics of Immigrants*, archived at https://perma.cc/WC65-BZD5 (last visited Apr. 25, 2025).

[13] Connor, *supra* note 11.

[14] American Immigration Council, *Immigrants in the United States*, archived at https://perma.cc/U2T8-NL8H (last visited Apr. 25, 2025).

admitted through humanitarian parole—helped address this challenge.[15]
Helping to sustain a multi-trillion-dollar industry, Local Government
*Amici*'s cities and counties rely on immigrants to avoid staffing shortages
in our nursing homes, health centers, and hospitals.[16] More than 18% of
healthcare workers are born outside of the United States, including 26%
of physicians, 16% of registered nurses, and 40% of home health aides.[17]
Local Government *Amici*'s cities and counties are among those who rely
on CHNV participants as an important part of providing these essential
services.

CHNV program participants have also played a crucial role in the
construction, maintenance, and operations of buildings *Amici*'s cities and
counties, which are core, yet often overlooked, tasks that keep our cities
and counties operating. From pouring cement for our office buildings or
erecting drywall for our homes to daily sweeping and mopping of the

---

[15] Moriarty, *supra* note 9.

[16] Institute for Community Health, *New Research: Already-Stretched
Healthcare Workforce in Jeopardy with Deportation Threats* (Apr. 10,
2025), archived at https://perma.cc/4S82-HAZG.

[17] Jeanne Batalova, *Immigrant Health-Care Workers in the United States*,
Migration Policy Institute, archived at [perma.cc] (last visited Apr. 25,
2025).

floors of our public buildings and commercial establishments, CHNV participants have likewise filled important gaps in not only the growth of our constantly evolving cities and counties, but also the daily work of keeping cities and counties clean and in working order.

Beyond keeping our facilities functioning, CHNV program participants further benefit Local Government *Amici*'s cities and counties by providing other critical services. CHNV participants drive our cities' and counties' buses and operate taxis or rideshares, which help keep our communities moving. They keep our children safe on school buses and at crosswalks, and serve hot lunches to workers, tourists, and students alike.

But the abrupt cessation of the CHNV parole program threatens these and other services the public relies on every day. Termination would remove 30,000 workers from the healthcare industry, 40,000 from the manufacturing sector, 30,000 from leisure and hospitality jobs, and 30,000 who currently work in construction.[18] These jobs—and, more

---

[18] Phillip Connor, *Industries with critical labor shortages added hundreds of thousands of workers through immigration parole*, FWD.us (Mar. 26, 2025), archived at https://perma.cc/PT7D-KSFE; *see also* Yael Schacher, *Setting the Record Straight on CHNV*, Refugees International (Mar. 28, 2025), archived at https://perma.cc/C3HG-Z8ZF; Connor, *supra* note 11.

importantly, the CHNV participants that fill them—local economies and directly serve our residents and visitors.

The number of jobs lost would thus be substantial, and could not be readily replaced. Instead, the sectors of local economies most acutely affected by the loss of essential workers would suffer. Public services would stop or be delayed or reduced, as workers who remain in those sectors would be unable to fully fill gaps left behind. Construction projects would be slowed or halted, and housing and other costs would balloon, hampering Local Government *Amici*'s cities' and counties' and the nation's economic prosperity. Visitors to our cities and counties may think twice without the presence of well-functioning transportation, fully staffed restaurants and attractions, and clean, tidy streets. And where many immigrants have staffed important roles in our schools' kitchens and cafeterias, our public school students, many of whom rely on hot meals prepared for them during the school day, would be left with lesser options.

**B. CHNV participants' continued protection under the program is also essential to maintaining public safety in Local Government *Amici's* cities and counties.**

In Local Government *Amici*'s cities and counties, CHNV participants, along with all members of our communities, are protected by law, help build strong bonds among neighbors, and can partner with local law enforcement officials to keep Local Government *Amici*'s cities and counties safe.

Public safety fundamentally depends on community trust, particularly the trust that those who are victimized by or witnesses to crime must be able to place in law enforcement. First responders work every day to keep our communities safe by building relationships directly with residents. This trust must be earned, and it cannot exist where members of our communities are afraid to come forward because of their immigration status. Rather, victims and witnesses must be able to cooperate with public safety officials, identifying and helping respond to threats in our communities. Their cooperation is essential.

Local law enforcement leaders have repeatedly maintained that law enforcement agencies "need people to come forward and communicate with" them for community policing to be effective; at its

core, community policing is "about building trust."[19] But when residents are not confident in their legal status, their communication and cooperation with law enforcement may "be less when [they] are afraid to come forward."[20]

For this reason, law enforcement in our cities and counties have worked hard over many years to build trust with their communities. In Boston, for example, approximately 28% of the city's 700,000 residents were not born in the United States,[21] and their trust in the Boston Police Department is one of the reasons Boston recorded fewer homicides in 2024 than in any other year since 1957.[22] Likewise, in Denver, community trust in law enforcement helped produce a 17% decrease in homicides in 2024.

---

[19] WCVB Channel 5 Boston, *Boston Police Commissioner Michael Cox on immigration laws and DEI*, YouTube (Feb. 16, 2025), archived at https://perma.cc/5NBY-K729.

[20] *Id.*

[21] City of Boston Planning Department, Boston in Context: Neighborhoods, archived at https://perma.cc/MH8H-LQKU (last updated Jan. 1, 2024).

[22] Molly Farrar, *'The city has never been safer': Boston records lowest murder rate since 1957, officials announce*, Boston.com (Dec. 29, 2024), archived at https://perma.cc/J8QM-6ZEB.

The law's protection is essential for this trust to exist. Terminating the CHNV program would undermine that trust and the safety it creates. Already, our residents talk often about their fear of reporting crimes, attending places of worship or school, or participating in the many other parts of society that strengthen our communities.[23] Termination of the CHNV parole program will only exacerbate this fear by pushing residents into the shadows. Fewer crimes will be reported, fewer witnesses will testify, and fewer of those who threaten the safety of our communities will be able to be held accountable.[24]

Additionally, the sudden nature of the proposed CHNV termination will create the type of instability that is directly correlated with decreases in public safety. When people cannot work, go to school, access government services, or form social bonds, communities are less safe.[25]

---

[23] City of Boston, Mayor Michelle Wu's Opening Statement to the United States House Committee on Oversight (Mar. 10, 2025), archived at https://perma.cc/WD7R-Z4JF.

[24] Anita Khashu, *The Role of Local Police: Striking a Balance Between Immigration Enforcement and Civil Liberties*, Police Foundation (Apr. 2009), archived at https://perma.cc/2653-KPT3.

[25] Hanna Love et al., *The path to public safety requires economic opportunity: Trends and solutions in urban, suburban, and rural communities*, Brookings Institution (Mar. 11, 2025), archived at https://perma.cc/B44Y-FNSB.

Public safety is a product of residents' active participation in all aspects of society; when people have stable incomes, high-quality educations, and deep ties with their neighbors, everyone in the community is safer.[26]

Termination of the CHNV parole program would undermine public safety in our cities and counties, and would undercut the longstanding, diligent efforts of community leaders and law enforcement to build trust across our neighborhoods.

## CONCLUSION

This Court should affirm the District Court's allowance of Plaintiffs-Appellees' emergency motion and keep the preliminary injunction in place pending the outcome of the District Court litigation.

*Amicus Curiae,* CITY OF BOSTON
Adam Cederbaum, Corporation Counsel

  /s/ Samuel Dinning
Samuel Dinning, Fir. Cir. No. 1215223
samuel.dinning@boston.gov
Thomas J. Broom, Fir. Cir. No. 1207623
thomas.broom@boston.gov
One City Hall Square, Room 615
Boston, MA 02201
(617) 635-4034

---

[26] *Id.*

## ADDITIONAL COUNSEL

DONNA R. ZIEGLER
County Counsel
1221 Oak St.
Oakland, CA 94612
Counsel for the County of Alameda, California

ROSALYN GUY-MCCORKLE
Allegheny County Solicitor
445 Fort Pitt Boulevard, Suite 300
Pittsburgh, PA 15219
Attorney for Allegheny County, Pennsylvania

EBONY M. THOMPSON
City Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202
Attorney for the City of Baltimore, Maryland

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago
121 North LaSalle Street, Room 600
Chicago, IL 60602
Attorney for the City of Chicago, Illinois

KATIE MCLOUGHLIN
Acting City Attorney
1437 Bannock Street, Room 353
Denver, CO 80202
Attorney for the City and County of Denver, Colorado

KRISTYN ANDERSON
City Attorney
City Hall, Room 210
350 S. Fifth Street
Minneapolis, MN 55415

Attorney for the City of Minneapolis, Minnesota

JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
Attorney for Montgomery County, Maryland

KRYSIA KUBIAK
City Solicitor and Chief Legal Officer
414 Grant Street
Pittsburgh, PA 15219
Counsel for the City of Pittsburgh, Pennsylvania

LYNDSEY M. OLSON
City Attorney
400 City Hall & Court House
15 West Kellogg Boulevard
St. Paul, MN 55102
Attorney for the City of St. Paul, Minnesota

DAVID CHIU
City Attorney
City Hall Room 234
One Dr. Carlton B. Goodlett Place
San Francisco, CA 94102
Attorney for the City and County of San Francisco, California

DOUGLAS T. SLOAN
City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
Attorney for the City of Santa Monica, California

ELI SAVIT
Washtenaw County Prosecuting Attorney
P.O. Box 8645

Ann Arbor, Michigan, 48107
Prosecuting Attorney for Washtenaw County, Michigan

**Appendix A – List of Amici Curiae**

## Local Governments

Alameda County, California

Allegheny County, Pennsylvania

City of Baltimore, Maryland

City of Chicago, Illinois

City and County of Denver, Colorado

City of Evanston, Illinois

City of Madison, Wisconsin

City of Minneapolis, Minnesota

Montgomery County, Maryland

City of Pittsburgh, Pennsylvania

City of Saint Paul, Minnesota

City and County of San Francisco, California

City of Santa Monica, California

Washtenaw County Prosecutor's Office, Michigan

## Local Government Leaders

Elizabeth Alcantar
*Mayor, City of Cudahy, California*

Valarie Bachelor
*Untied School District Board Director, City of Oakland, California*

Ravinder Bhalla
*Mayor, City of Hoboken, New Jersey*

*Chelsea Byers*
*Mayor, City of West Hollywood, California*

John Clark
*Mayor, Town of Ridgway, Colorado*

Alison Coombs
*Councilmember, City of Aurora Colorado*

Justin Douglas
*Commissioner, Dauphin County, Pennsylvania*

Ed Gainey
*Mayor, City of Pittsburgh, Pennsylvania*

Beau Harbin
*Legislator and Democratic Minority Leader, Cortland County, New York*

Jani Hitchen
*Councilmember, Pierce County Council, Washington*

Susan Hughes-Smith
*Legislator, Monroe County, New York*

Lisa Kaplan
*Councilmember, City of Sacramento, California*

Jerald Lentini
*Director, Town of Manchester, Connecticut*

Quinton Lucas
*Mayor, City of Kansas City, Missouri*

Randall Martin
*1st Ward Supervisor, City of Hudson, New York*

William Moehle
*Supervisor, Town of Brighton, New York*

Dontae Payne
*Mayor, City of Olympia, Washington*

Delishia Porterfield
*Councilmember At Large, Metropolitan Nashville & Davidson County, Tennessee*

Idelma Quintana
*Commissioner, City of Hollywood, Florida*

David Stout
*Precinct 2 Commissioner, El Paso County, Texas*

Zulfat Suara

*Councilmember at Large, Metropolitan Nashville & Davidson County,*
*Tennessee*

Ginny Welsch

*Councilmember, Nashville and Davidson Counties, Tennessee*

Robin Wilt

*Councilmember, Town of Brighton, New York*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App.
P. 29(a)(5) because, excluding the parts of the document exempted
by the Fed. R. App. P. 32(f):

- this document contains 3,329 words as verified by the word count
function of Microsoft Word

2.    This document complies with the typeface requirements of Fed. R.
App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P.
32(a)(6) because:

- this document has been prepared in a proportionally spaced
typeface using Microsoft Word in 14-point Century Schoolbook

/s/ Samuel B. Dinning

Attorney for the City of Boston

Dated: July 3, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, I electronically filed the foregoing Document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Justin Cox
Law Office of Justin B. Cox
P.O. Box 1106
97031-7031
Hood River, OR 30317
541-716-1818
justin@jcoxconsulting.org
Attorney for Plaintiffs-Appellees

Katherine Shinners
DOJ-Civ
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
202-598-8259
katherine.j.shinners@usdoj.gov
Attorney for Defendants-Appellants

/s/ Samuel B. Dinning