# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Appeal No. 25-1384

————————————————————

SVITLANA DOE; MAKSYM DOE; MARIA DOE; ALEJANDRO DOE;
ARMANDO DOE; ANA DOE; CARLOS DOE; OMAR DOE; SANDRA
MCANANY; KYLE VARNER; WILHEN PIERRE VICTOR; HAITIAN
BRIDGE ALLIANCE; ANDREA DOE; VALENTIN ROSALES
TABARES; MARIM DOE; ADOLFO GONZALEZ, JR.; ALEKSANDRA
DOE; TERESA DOE; ROSA DOE; MIGUEL DOE; LUCIA DOE;
DANIEL DOE; GABRIELA DOE; NORMA LORENA DUS,

Plaintiff-Appellees,

v.

KRISTI NOEM, in their official capacity as Secretary of Homeland
Security; PETE R. FLORES, in their official capacity as Acting
Commissioner of U.S. Customs and Border Protection; KIKA SCOTT, in
their official capacity as the Senior Official Performing the Duties of the
Director of U.S. Citizenship and Immigration Services; DONALD J.
TRUMP, in their official capacity as President of the United States;
TODD LYONS, in their official capacity as the Acting Director of
Immigration and Customs Enforcement

Defendant-Appellants.

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS,

1:25-cv-10495-IT, Hon. Indira Talwani

————————————————————

BRIEF OF FAITH-BASED ORGANIZATIONS AS *AMICI CURIAE* IN
SUPPORT OF PLAINTIFF-APPELLEES AND AFFIRMANCE OF THE
DISTRICT COURT'S ORDER

—————————————————————

Ana Muñoz (1st Cir. # 1189659)            Aaron Simcha Jon Zelinsky
ZALKIND DUNCAN & BERNSTEIN LLP            ZUCKERMAN SPAEDER LLP
65a Atlantic Avenue                        100 E. Pratt St., Ste 2440
Boston, MA 02110                           Baltimore, MD 21202
(617) 742-6020                             (410) 949-1167
amunoz@zalkindlaw.com                      azelinsky@zuckerman.com

*Counsel for Amici Curiae Faith-Based Organizations*

July 2, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. iii

TABLE OF AUTHORITIES ...............................................................iv

CORPORATE DISCLOSURE STATEMENT ..........................................1

IDENTITY AND Interest of *Amici Curiae*.........................................2

Summary of Argument .....................................................................4

Argument.........................................................................................6

    A.    The Importance of Parole Pathways, Including CHNV
        Parole, in *Amici*'s Faith-Based Actions ..................................6

        1.  The Evangelical Lutheran Church in America (ELCA).........6

        2.  Immigration Justice Group of Temple Beth Elohim,
            Wellesley, Massachusetts. ..................................................7

        3.  The Reformed Church of Highland Park, New Jersey...........8

        4.  NETWORK Lobby for Catholic Social Justice .......................9

        5.  First Baptist Church, Panhandle, Texas..............................10

        6.  Kehilla Community Synagogue, Piedmont, California ........10

        7.  Sisters of St. Francis, Clinton, Iowa ...................................11

        8.  White Deer-Skellytown Lighthouse Food Pantry ...............11

    B.    The Harm to Faith-Based Communities, Including
        *Amici*, if the District Court's Order is Reversed. .................12

Conclusion ....................................................................................14

CERTIFICATE OF COMPLIANCE WITH RULE 29 & 32 ...................16

CERTIFICATE OF SERVICE...............................................................17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Nken* v. *Holder*,
  556 U.S. 418 (2009) ..................................................................................... 10

**OTHER AUTHORITIES**

3 *Colossians* 3:11 (NASB1995) ........................................................................ 6

*Deuteronomy* 10:19 (NASB1995) ..................................................................... 6

*Exodus* 23:9 (NASB1995) .................................................................................. 3

*Hebrews* 13:1 (NASB1995) ............................................................................... 6

*Leviticus* 19:33-34 (NASB1995) ................................................................ 3, 6, 7

*Matthew* 25:35 (NASB1995) ........................................................................ 3, 6

Qur'an, Surah Al-Baqarah 2:177 ...................................................................... 6

Qur'an, Surah Al-Anfal 8:41 ............................................................................. 6

Qur'an, Surah An-Nisa 4:36 .............................................................................. 6

Qur'an, Surah At-Tawbah .................................................................................. 6

*Talmud Yerushalmi, Tractate Sanhedrin 4:9* ................................................ 8

iv

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure *Amicus Curiae* make the following disclosures:

1) For non-governmental corporate parties, list any parent corporation:

*None.*

2) For non-governmental corporate parties, list all publicly held corporations that hold 10% or more of the party's stock:

*None.*

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici Curiae* are religious and religiously-affiliated organizations that provide charitable services and resources to recent migrants and their families, including those who received CHNV Parole. Much of *Amici's* work, past, present and future, is threatened by the Applicants' sudden revocation of parole on a class-wide basis to such parolees. This overbroad action threatens to harm not just those whom *Amici* walk alongside, but *Amici* themselves as well. *Amici* have invested substantial time and money in assisting parole recipients and others like them in finding jobs, securing housing, and integrating into their local communities. Reversing the District Court's order will destroy that important work.

*Amici's* interest in this matter derives from, among other sources, both the Hebrew and Christian Bibles. Jews and Christians alike are taught that: "When a stranger resides with you in your land, you shall not do him wrong. The stranger who resides with you shall be to you as the native among you, and you shall love him as yourself; for you were

---

[1]    No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparation or submission of this brief, and no person other than the *amici curiae* or their counsel contributed money that was intended to fund preparation or submission of this brief.

strangers in the land of Egypt[.]" *Leviticus* 19:33-34. "You shall not oppress a stranger, since you yourselves know the feelings of the stranger, for you were also strangers in the land of Egypt." *Exodus* 23:9. "For I was hungry, and you gave Me something to eat; I was thirsty, and you gave Me something to drink; I was a stranger, and you invited Me in." *Matthew* 25:35. While *Amici* may disagree deeply on many serious issues of social policy and religious belief, they each support the vital interests of migrants and refugees who are served by CHNV Parole.

A full list of *amici* is below:

- Evangelical Lutheran Church in America
- The Festival Center
- First Baptist Church, Panhandle, Texas
- Hope Homes for Ukraine Team
- Immigration Justice Group of Temple Beth Elohim, Wellesley, Massachusetts
- Kehilla Community Synagogue, Piedmont, California
- Lake Street Church of Evanston, Evanston, Illinois
- Maryknoll Office for Global Concerns
- NETWORK Lobby for Catholic Social Justice
- The Reformed Church of Highland Park, New Jersey
- Sisters of St. Francis, Clinton, Iowa
- White Deer-Skellytown Lighthouse Food Pantry, White Deer, Texas

## SUMMARY OF ARGUMENT

*Amici* offer a singular perspective on the public interest at stake in this case. *Amici* have an interest in and derive benefits from helping those less fortunate within our society, including those in immigrant communities that have received CHNV Parole. Through their faith-based work, *Amici* have a unique and firsthand knowledge of the adverse impact of removing protections from these vulnerable communities. Many faith groups, including many *Amici*, have sponsored people to come in through the CHNV humanitarian pathways, and their continued work with these individuals plays an important role in their faith.

Sponsoring and welcoming individuals and families plays an important role in *Amici*'s faith observance. Ending CHNV Parole precipitously on a class-wide basis, without individualized assessment, risks grievous harm to the parolees and to the faith-based work *Amici* have sought to accomplish by working together with them. Reversal of the District Court's order risks destroying the faith-based work *Amici* have undertaken, in some cases for years. Reversal will remove the ability of these individuals to work—and *Amici* have helped them to find jobs and become contributing members of their communities that others

4

now rely upon. Reversal will eliminate the ability for many to lawfully remain in the United States for any additional period of time—and *Amici* assisted in bringing them here and helping them integrate, including by becoming members of *Amici*'s own religious institutions. And reversal will frustrate the work *Amici* have already done and will continue to do with recipients of CHNV Parole, as well as with parolees who entered the country through other pathways, such as those for Ukrainians and Afghans fleeing war, and others for assisting families to more quickly and safely unite in this country. These individuals will now fear an immediate, unreviewable, and collective revocation of status at any moment.

Reversing the District Court's order would thus not only harm individuals seeking refuge, but would also rob communities like *Amici* of the opportunity to live out their faith in meaningful and transformative ways. Reversal would sever relationships, create unnecessary hardship, and undermine the spiritual and social fabric that has grown from these partnerships. *Amici* and their communities are stronger because of this program, and they urge the Court to affirm the District Court order for the public interest of all involved.

## ARGUMENT

### A. The Importance of Parole Pathways, Including CHNV Parole, in *Amici*'s Faith-Based Actions

Many faith traditions share the message of welcoming and loving the stranger, which appears in multiple religious texts, including the Hebrew and Christian Bibles. *See, e.g.*, *Leviticus* 19:33–34; *Deuteronomy* 10:19; *Matthew* 25:35–40; 3 *Colossians* 3:11; *Hebrews* 13:1, and the Qur'an, Surah Al-Baqarah 2:177; Surah An-Nisa 4:36; Surah Al-Anfal 8:41; Surah At-Tawbah. Through their work helping migrant CHNV parolees and others like them, *Amici* have sought to give life to the words of Leviticus: "When a stranger resides with you in your land, you shall not do him wrong. The stranger who resides with you shall be to you as the native among you, and you shall love him as yourself; for you were aliens in the land of Egypt[.]" *Leviticus* 19:33-34.

The CHNV Parole process has been critical to providing that help and to the work *Amici* seek to do for those vulnerable. Below are representative capsule narratives of the important role that these faith-based actions play in the lives of *Amici* and the parole recipients they have volunteered to serve:

### 1. *The Evangelical Lutheran Church in America (ELCA)*

The Evangelical Lutheran Church in America (ELCA) is the largest Lutheran denomination in North America, and is the fourth-largest Protestant body in the United States. The ELCA has over 8,500 member congregations which, in turn, have approximately three million individual members. The ELCA has a network of 266 congregations, many of which work alongside Venezuelan, Haitian, and Cuban families who received humanitarian parole. These congregations are in Massachusetts, New York, New Hampshire, Illinois, Wisconsin, Colorado, Texas, California and Washington. Accompanying migrants in their transitions to local communities includes assisting them to secure housing and all basic family necessities (including food, medical care, and school entrance for children). Most importantly, each migrant needs legal services to apply for more permanent status in the U.S. These congregations help these families secure legal representation, hopefully pro bono or low bono, and, in some cases, provide assistance in paying legal fees. The financial support by each congregation varies depending on location and family size and can range between $14,000 - $35,000 per year.

**2.    *Immigration Justice Group of Temple Beth Elohim, Wellesley, Massachusetts.***

Guided by both Jewish values and history, Temple Beth Elohim first took action nine years ago after witnessing the horrors of war and dislocation of peoples escaping terror and persecution. Since then, the Immigration Justice Initiative of Temple Beth Elohim, in partnership with Jewish Family Service, has assisted twenty families from five countries as they sought safety and security, some of whom through the CHNV pathways. Some escaped war zones, others fled persecution because of their political beliefs, their gender identities, or their alignment with U.S. Armed Forces. Temple Beth Elohim's actions are inspired by the Jewish teaching, "He who saves one life is as if he saves the entire world." Talmud Yerushalmi, Tractate Sanhedrin 4:9

### 3.    *The Reformed Church of Highland Park, New Jersey*

Over the past two years The Reformed Church of Highland Park has provided services for around 3,000 Haitians and hundreds of Cubans, many who have come via CHNV Parole. The church has provided cash assistance, employment services, health services, school supports, youth mentoring, overall case management and housing support. Since the April 24, 2025 scheduled termination for the CHNV Parole program, some of these people have lost their jobs, as employers fear that the their

8

employees might be forced to leave, or that the employers themselves could become targets.

### 4.    *NETWORK Lobby for Catholic Social Justice*

Founded by Catholic Sisters in 1972, NETWORK Lobby for Catholic Social Justice is a national advocacy organization grounded in Gospel values and Catholic social justice tradition. NETWORK's faith-filled community has supported CHNV beneficiaries in various ways. Catholic sisters and members with NETWORK have been deeply engaged with the Haitian community in Springfield, Ohio, many of whom arrived under CHNV. These CHNV parolees have become integral parts of the community, staffing factories and businesses, and have brought a vibrancy to a post-industrial city. In Youngstown, Ohio, another Catholic sister has been connected to Venezuelan students who arrived in Youngstown with CHNV. They have been able to attend school, enroll in college, support faith-based non-profits, and become valued members of the community. If CHNV beneficiaries are forced to leave, they will return to countries where they will face extreme poverty, persecution and insecurity. In addition, non-profit organizations will lose volunteers,

schools and universities will lose students, and the city will once again have vacant houses.

### 5.    *First Baptist Church, Panhandle, Texas*

The First Baptist Church, Panhandle, Texas has walked alongside its members who served as a sponsor for humanitarian parolees and has seen the profound impact this experience has had on both the parolees and the congregation. The humanitarian parole program allowed the congregation to offer safety and support to someone fleeing danger, embodying our shared values of compassion, hospitality, and justice. The parolees quickly integrated into the Panhandle community—working legally, paying taxes, volunteering, and joining the church family.

### 6.    *Kehilla Community Synagogue, Piedmont, California*

Kehilla Community Synagogue is a congregation of about 550 member households located in Piedmont, California. Over 100 members of the congregation have participated in accompaniment teams, which provide practical assistance and welcome to newly arrived individuals and families as they resettle in the Bay Area. Kehilla is currently working with an extended Haitian family. When they arrived, the family consisted of a pregnant couple, for whom Kehillah provided shelter in

10

their building, and Kehilla has remained deeply involved with this family since that time. One family member came last year as part of the CHNV program, and she has been able to settle, has a good job, and is learning English. Among many other things, Kehilla has assisted the family to find legal resources, housing, jobs, enroll a child in day care, and help family members learn to drive. The Kehilla community has spent innumerable hours with this family and provided approximately $10,000 of financial support over the time they have known them. The family has become an integral part of the Kehilla congregation and its community life

### 7. *Sisters of St. Francis, Clinton, Iowa*

With the support of the Sisters of St. Francis and others, the small rural community of DeWitt, Iowa rallied and helped individuals from Ukraine find jobs, secure houses with mortgages and attend the local schools. Local businesses rely on these individuals as employees and customers. Local banks rely on them for mortgage payments.

### 8. *White Deer-Skellytown Lighthouse Food Pantry*

The White Deer-Skellytown Lighthouse Food Pantry is an organization run by volunteers serving food-insecure members of the

community by providing them with both essential food items and, just as importantly, spiritual support. The success of this Food Pantry is highly dependent upon its volunteers, including multiple CHNV parolees.

## B. The Harm to Faith-Based Communities, Including *Amici*, if the District Court's Order is Reversed.

Should this Court reverse the District Court's order, it will end parole status and work authorization for many hundreds of thousands of persons. Such a sudden termination would do grievous harm to *Amici* and other faith-based communities that walk alongside these individuals. The "public interest" is an important factor in determining whether preliminary relief should be granted, the effect, if any, *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009), and the public interest here cuts strongly in favor of affirming the District Court.

First, reversal would take away the opportunity for *Amici* and others like them to live out their faith in transformative ways. *Amici* stand together with parole recipients around common shared values: freedom, honesty, hope, faith and community. If this Court lifts the District Court's order, Amici risk, in an instant, losing these individuals who live and pray alongside them; the economic, cultural and social life of their communities would also suffer from loss of their contributions.

12

This instant loss would be devastating for *Amici* and others like them, who have worked so hard to assist in bringing these people into their communities, and helping them to build a new life in the United States. *Amici* have helped these people secure homes, mortgages, and jobs; find schools for their children, and food for their families; and create a new and welcoming life in communities all across America. Sending these individuals away in an instant will not just harm them—though it will harm them the most—it will harm the many communities throughout the country who have sought to live out their faith by walking alongside these people.

Second, reversing the District Court's order would harm *Amici*'s efforts with other non-CHNV parolees, who will now fear that they too, at any moment, could lose their status *en masse* and without any individualized consideration. This will harm *Amici*'s efforts by creating uncertainty as well among individuals who would seek to support these parolees. If at any time, an entire class of parolees can have their lawful status terminated with the stroke of a pen, with no individualized assessment, it will be more difficult to fundraise and assist those individuals. Reversal will make it more difficult for any individual on

parole to obtain a job—after all they could have to leave at a moment's notice. Or to secure a mortgage—since they could be rendered removable at any moment. All of this will make the work *Amici* seek to do much more difficult.

## CONCLUSION

*Amici* live their faith by walking alongside those who are strangers in a strange land. The wholesale termination of parole status for CHNV parolees without any individualized assessment will harm not just those *Amici* seek to help, but will frustrate *Amici's* attempts to live out their faith, and will make it harder to help all paroled communities in the future. *Amici's* faith dictates that they must speak up now in favor of affirmance of the District Court's preliminary injunction

Dated: July 2, 2025                    Respectfully submitted,

                                       */s/ Ana Muñoz*

                                       Ana Muñoz (#1189659)
                                       ZALKIND DUNCAN & BERNSTEIN LLP
                                       65a Atlantic Avenue
                                       Boston, MA  02110
                                       (617) 742-6020
                                       amunoz@zalkindlaw.com

                                       Aaron Simcha Jon Zelinsky
                                       ZUCKERMAN SPAEDER LLP

100 East Pratt Street
Suite 2440
Baltimore, MD 21202
Tel: (410) 949-1167
Fax: (410) 659-0436
azelinsky@zuckerman.com

*Counsel for Amici Curiae*

CERTIFICATE OF COMPLIANCE WITH RULE 29 & 32

I hereby certify that this brief complies with the type-volume limitations in Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 1960 words. I further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14 point Century Schoolbook font.

/s/ Ana Muñoz

Dated: July 2, 2025

CERTIFICATE OF SERVICE

I, Ana Muñoz, counsel for *Amicus Curiae*, hereby certify that this document has been filed through the Electronic Case Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this date.

<u>/s/ Ana Muñoz</u>

Dated: July 2, 2025