25-1384

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

Svitlana Doe, *et al.*,

*Plaintiffs-Appellees*,

v.

Kristi Noem, Secretary of Homeland Security, *et al.*,

*Defendant-Appellants*.

On Appeal from the United States District Court
for the District of Massachusetts

## RESPONSE TO PETITION FOR REHEARING

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

PATRICK GLEN
*Senior Litigation Counsel*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*
First Cir. Bar No. 1216699
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878,
Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
katherine.j.shinners@usdoj.gov

ELISSA FUDIM
*Trial Attorney*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 1

    I.    The Panel's Reliance on House Report 104-469 Was Appropriate and Does Not Undermine the Panel's Sound Reasoning. ............................. 1

    II.    Plaintiffs' Request for Guidance to the District Court Is Not a Basis for Rehearing. ....................................................................................... 9

CONCLUSION .......................................................................................................... 11

CERTIFICATE OF COMPLIANCE ......................................................................... 12

CERTIFICATE OF SERVICE ................................................................................... 13

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Am. Fed'n of Tchrs. v. Bessent*,
  152 F.4th 162 (4th Cir. 2025) ...................................................................9

*Ashki v. I.N.S.*,
  233 F.3d 913 (6th Cir. 2000) .....................................................................7

*Barr v. Galvin*,
  630 F.3d 250 (1st Cir. 2010)....................................................................10

*Cruz-Miguel v. Holder*,
  650 F.3d 189 (2d Cir. 2011)......................................................................7

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  845 F.3d 470 (1st Cir. 2017).....................................................................9

*INS v. Cardoza–Fonseca*,
  480 U.S. 421 (1987) ..............................................................................2, 5

*Lackey v. Stinnie*,
  604 U.S. 192 (2025) ..................................................................................9

*Lattab v. Ashcroft*,
  384 F.3d 8 (1st Cir. 2004).........................................................................7

*Ortega-Cervantes v. Gonzales*,
  501 F.3d 1111 (9th Cir. 2007)...................................................................7

*Ortega-Lopez v. Barr*,
  978 F.3d 680 (9th Cir. 2020) ....................................................................7

*Sherley v. Sebelius*,
  689 F.3d 776 (D.C. Cir. 2012)..................................................................9

*Sierra Club v. United States Army Corps of Eng'rs*,
  997 F.3d 395 (1st Cir. 2021)....................................................................9

*State of Rhode Island v. Narragansett Indian Tribe*,
  19 F.3d 685 (1st Cir. 1994).......................................................................2

*United States v. Bongiorno*,
    110 F.3d 132 (1st Cir. 1997) ................................................................................10

*United States v. Rivera*,
    131 F.3d 222 (1st Cir. 1997) ..................................................................................2

Statutes

8 U.S.C. § 1182(d)(5)(A) ................................................................................ 2, 3, 8

Rules

Fed. R. App. P. 40(b)(2) .....................................................................................1, 2

Other Authorities

Fed. Prac. & Proc. Juris. § 4478.5 .......................................................................10

H.R. 2202 ................................................................................................. 4, 5, 6, 7

H.R. 3610 ...............................................................................................................6

H.R. Rep. No. 104-469 ..........................................................................................5

IIRIRA, Pub. L. No. 104-208, div. C § 602(a) (Sept. 30, 1996) ..........................3, 6

**INTRODUCTION**

Panel rehearing is appropriate only if a decision overlooks or misapprehends a point of law or fact. Fed. R. App. P. 40(b)(2). Any such point should be a material one—otherwise rehearing would be a futile exercise. Here, Plaintiffs do not identify any material point of law or fact that the panel overlooked or misapprehended. The panel correctly reversed the district court's grant of preliminary relief of the discretionary revocation of parole to Plaintiffs and the class, and this Court should deny the petition for panel rehearing.

**ARGUMENT**

**I.     The Panel's Reliance on House Report 104-469 Was Appropriate and Does Not Undermine the Panel's Sound Reasoning.**

Plaintiffs' concerns about the panel's citation to certain legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) do not warrant rehearing. *See* Pet. 2–5.

First, even if Plaintiffs' challenge to the use of legislative history were meritorious, that would not necessitate any change to the Court's opinion. The Court's textual analysis of the parole statute more than supports its conclusion that Plaintiffs did not demonstrate a strong likelihood of success on their claim that the parole statute requires the Secretary to end grants of parole on a case-by-case basis. *See* Op. 23–25, 27. As the Court explained, the structure and text of § 1182(d)(5)(A) plainly show that the "case-by-case" requirement modifies the language governing

1

when parole may be granted and does not modify the language governing when grants of parole may be ended. *See id.* "'[W]here the "statute's text is encompassing, clear on its face, and productive of a plausible result,"' the Court's inquiry, "at most, should be aimed at determining 'whether there is a clearly expressed legislative intention contrary to [the statutory] language, which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses.'" *United States v. Rivera*, 131 F.3d 222, 226 (1st Cir. 1997) (quoting *State of Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 698 (1st Cir. 1994)*, and INS v. Cardoza–Fonseca*, 480 U.S. 421, 432–33 n. 12 (1987)). Here, the panel's decision is well supported by the statutory text, whether or not it invokes legislative history as *additional* support for that view. This is particularly so because Plaintiffs point to no contrary legislative history that supports their own proposed interpretation of the parole statute or undermines the panel's sound textual reading.

Second, the Court did not err by citing the discussion in H.R. Rep. No. 104-469 concerning language that *was* enacted in IIRIRA. The legislative history only supports—and in no way contradicts—the panel's conclusion. Nor did the panel overlook any material point in its citation to legislative history, given the context in which the panel relied upon H.R. Rep. No. 104-469.

Before IIRIRA, Section 212(d)(5)(A) of the INA (8 U.S.C. § 1182(d)(5)(A)) granted the Attorney General broad discretion to "temporarily" parole aliens

2

applying for admission to the United States into the country for "emergent reasons or reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A) (Apr. 1996).[1] In 1996, this section of the INA was amended to include the current language of the statute, which allows the Secretary to parole into the United States aliens "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); IIRIRA, Pub. L. No. 104-208, div. C § 602(a) (Sept. 30, 1996).

The panel relied upon a House Committee Report, H.R. Rep. No. 104-469 (part 1) ("H.R. Rep. 104-469"), to make the point that Congress added the "case-by-case" language to the parole statute "with the explicit intent of limiting the Secretary's discretion to grant parole." Op. 26. To make that point, the panel cited two portions of H.R. Rep. No. 104-469, language included by its proponents, *id.* at

---

[1] Before IIRIRA, § 1182(d)(5)(A) read, in full:

> The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (Apr. 1996).

3

140, and language included by its opponents, *id.* at 538. Op. 26. The panel observed that its proponents stated that "in recent years, parole has been used increasingly to admit entire categories of aliens who do not qualify for admission under any other category in immigration law," and that doing so "contravene[d] the intent of" parole, which Congress "intended to be used on a case-by-case basis." Op. 26 (quoting H.R. Rep. No. 104-469 at 140). The panel observed that the bill's opponents likewise viewed the "case-by-case" language to "impose 'sweeping new restrictions on the' Secretary's parole authority." Op. 26 (quoting H.R. Rep. No. 104-469 at 538).

Plaintiffs argue that the parts of the report quoted by the panel concerned a proposed amendment to § 1182(d)(5)(A) that would have narrowly defined the phrases "urgent humanitarian reason" and "strictly in the public interest." Pet. 3. Not so. While it is true that the original version of H.R. 2202 contained a proposal to define those terms, the language the panel cited did not concern those proposed definitions and instead was directed more broadly at the "case-by-case" language that was proposed in H.R. 2202—and ultimately included in IIRIRA.[2] This is clear from the text surrounding the language quoted by the panel.

---

[2] Specifically, the reported version of H.R. 2202 proposed amending the parole statute to clarify that parole may be granted on a "case-by-case basis" and to replace the phrase "emergent reasons or reasons deemed strictly in the public interest":

> The Attorney General, in the sole discretion of the Attorney General, may on a case-by-case basis parole an alien into the United States

4

The sentence immediately preceding the language the panel quoted from the bill's proponents reads, "The text of section 212(d)(5) is clear that the parole authority was intended to be used on a case-by-case basis to meet specific needs, and not as a supplement to Congressionally-established immigration policy." H.R. Rep. No. 104-469 at 140. The proposed definitions are not even mentioned until five paragraphs later, and the panel did not quote anything from that section of the report. *Id*. at 141.

Similarly, the sentences immediately following the language the panel quoted from the bill's opponents read, "Section 524 of the bill states that the Attorney General may parole aliens on a case-by-case basis only for urgent humanitarian reasons or for a reason deemed strictly in the public interest. We believe that there is no rationale for this legislative change." *Id*. at 538. This section of the report contains no reference to the proposed definitions at all. *Id*.

Nor did the report concern a different legislative process, as Plaintiffs suggest. *See* Pet. 3. H.R. 2202 formed part of the legislative process leading to IIRIRA and the addition of the relevant "case-by-case" language to the statute, and those changes

---

temporarily, under such conditions as the Attorney General may prescribe, only—(i) for an urgent humanitarian reason (as described under subparagraph (B)); or (ii) for a reason deemed strictly in the public interest (as described under subparagraph (C)).

H.R. Rep. No. 104-469, part 1, at 77–78 (Mar. 4, 1996).

5

were clearly animated by the same Congressional concerns set forth in H.R. Rep. No. 104-469. The language was first proposed in H.R. 2202 on August 4, 1995, but was omitted from the version passed by the House.[3] The Senate added the language back by substituting the "case-by-case" language it had introduced in S. 1664 into H.R. 2202.[4] The House agreed to the addition in the reconciliation process, and the provision was ultimately enacted in IIRIRA as part of a consolidated omnibus appropriations bill. *See* Conf. Report, H.R. Rep. No. 104-828 (Sept. 24, 1996); 142 Cong. Rec. 135, S11451 (Sept. 26, 1996); H.R. 3610; IIRIRA, Pub. L. No. 104-208, div. C (Sept. 30, 1996).

In short, the panel cited language from H.R. Rep. No. 104-469 to show that Congress was concerned about the expanded use of parole and was considering amendments—including the "case-by-case" amendment—to restrict *grants* of parole and was not concerned with restricting the Secretary's authority to terminate parole. Op. 27 ("Congress was specifically concerned with limiting grants of parole rather than limiting the ability to effect its termination."). The report the panel cited is thus relevant to showing that congressional intent favors the government, not

---

[3] *See generally* https://www.congress.gov/bill/104th-congress/house-bill/2202/all-actions (last visited Nov. 2, 2025); https://www.congress.gov/bill/104th-congress/senate-bill/1664/all-actions (last visited Nov. 2, 2025).

[4] S. 1664, too, was motivated by the desire to "increase control over immigration to the United States" by, in part, "reducing the abuse of parole and asylum provisions." S. Rep. 104-249 at 2 (Apr. 10, 1996).

6

Plaintiffs, because it concerned text that Congress ultimately did enact verbatim, at the end of a process that began with the proposal of the language in H.R. 2202, accompanied by H.R. Rep. No. 104-469.

Indeed, H.R. Rep. No. 104-469 is often cited as relevant to Congressional intent with respect to the parole amendments, *see, e.g.*, *Cruz-Miguel v. Holder*, 650 F.3d 189, 199 n.15 (2d Cir. 2011); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007), and with respect various other aspects of IIRIRA—including the general purpose of the legislation. *E.g.*, *Lattab v. Ashcroft*, 384 F.3d 8, 18–20 (1st Cir. 2004) (citing H.R. Rep. No. 104-469, part 1, as evidence of Congressional intent "to make the removal of illegal reentrants more expeditious"); *Ashki v. I.N.S.*, 233 F.3d 913, 917 (6th Cir. 2000) (citing H.R. Rep. 104-469 for proposition that purpose of IIRIRA was to expedite removal and limit availability of discretionary relief); *Ortega-Lopez v. Barr*, 978 F.3d 680, 682 (9th Cir. 2020) (citing H.R. Rep. 104-469 for Congressional intent in IIRIRA).

Tellingly, too, Plaintiffs do not cite any contrary legislative history that would suggest that Congress was concerned at any time in the legislative process about limiting the Secretary's authority to terminate parole—because no such history exists. Reconsideration is not warranted to eliminate references to H.R. Rep. No. 104-469.

Again, that legislative history just emphasizes what the text and statutory history already make plain. IIRIRA changed only the standard for granting parole—replacing "for emergent reasons or for reasons deemed strictly in the public interest" with "only on a case-by-case basis" for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).  Congress did not modify, qualify, or even mention the immediately following sentence authorizing *termination* "when in the opinion of the Attorney General the purposes of such parole shall have been served." *Id.*  The structural and textual asymmetry between these two sentences confirms what the panel recognized:  Congress sought to narrow the categorical use of parole grants, not to constrain the agency's long-established authority to end parole when its justification ceases to exist.  The legislative history of the "case-by-case" language, *see* Op. 26—whether drawn from H.R. Rep. No. 104-469 or from the final conference materials—just reflects that limited objective.

The panel thus appropriately relied upon H.R. Rep. No. 104-469 as additional evidence supporting its correct textual reading of the "case-by-case" language in the parole statute, and no amendment to the Petition is warranted.  If the Court deems an amendment is warranted to clarify that H.R. Rep. No. 104-469 accompanied an earlier version of the bill that became IIRIRA, rather than the final version, this can be accomplished through an errata without rehearing.  For example, the opinion

8

could describe H.R. Rep. No. 104-469 as the "House Report accompanying an early version of IIRIRA."

## II. Plaintiffs' Request for Guidance to the District Court Is Not a Basis for Rehearing.

Plaintiffs next ask the panel to "clarify" the impact of one of its rulings on future district-court merits decisions. *See* Pet. 5. Plaintiffs' desire for the opinion to include additional guidance to the district court is not a basis for panel rehearing, as Plaintiffs do not point to any material point the panel overlooked. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 845 F.3d 470, 475 (1st Cir. 2017) ("[P]etitioners must point to something that they 'believe[ ] the court has overlooked or misapprehended.'" (quoting Fed. R. App. P. 40(b)(2))).

A clarification or change to the panel's opinion in this regard is neither necessary nor appropriate. The impact of this Court's decision on potential future decisions on the merits is not the subject of this appeal, and law already exists concerning the precedential value of decisions in this posture. *See, e.g.*, *Lackey v. Stinnie*, 604 U.S. 192, 201 (2025) (explaining that preliminary injunctive relief is predictive and does not "conclusively resolve the rights of parties on the merits"); *Sierra Club v. United States Army Corps of Eng'rs*, 997 F.3d 395, 404 (1st Cir. 2021) (similar); *see also Am. Fed'n of Tchrs. v. Bessent*, 152 F.4th 162, 170–71 (4th Cir. 2025) (referring to prior ruling on *Nken* stay pending appeal as "a prediction about the likely outcome" on the merits); *Sherley v. Sebelius*, 689 F.3d 776, 783 (D.C. Cir.

9

2012) (concluding that issue decided on preliminary injunction was law of the case; "[a] fully considered appellate ruling on an issue of law made on a preliminary injunction appeal, however, does become the law of the case for further proceedings in the trial court on remand and in any subsequent appeal" (quoting 18B Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 4478.5 (2d ed.)).

This Court ruled that Plaintiffs did not make a strong showing of likelihood of success on their claim that the Secretary's parole termination decision was premised on a legal error that rendered it arbitrary and capricious. Plaintiffs are free to argue to the district court what they believe the implications of that ruling on future decisions should be. As with any preliminary-injunction appeal, this Court's prediction of Plaintiffs' likelihood of success is at minimum a persuasive indicator that their claims lack merit. No amendment to the Court's opinion can change that effect, and Plaintiffs' request for the Court to discuss the precedential effect of its decision for the district court's benefit is a request for the addition of dicta.

Plaintiffs' use of their petition to argue the persuasive weight of decisions addressing the application of expedited removal to parolees is improper. *See* Pet. 7–8. Merely rehashing legal arguments already presented to the panel is not an appropriate use of the rehearing mechanism, *Barr v. Galvin*, 630 F.3d 250, 251 (1st Cir. 2010); *United States v. Bongiorno*, 110 F.3d 132, 133 (1st Cir. 1997), and Plaintiffs are not, in any event, asking the panel to reconsider its substantive

decision. Further, the legal holdings of these district-court cases are far from established law. Indeed, the government's appeal from the lead decision of the D.C. District Court, *CHIRLA*, is currently pending before the D.C. Circuit. *See Coalition for Humane Immigrant Rights v. Noem*, No. 25-5289 (D.C. Cir.).

## CONCLUSION

For these reasons, this Court should deny the petition for panel rehearing.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

PATRICK GLEN
Senior Litigation Counsel

/s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
First Cir. Bar No. 1216699
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 598-8259
(202) 305-7000 (facsimile)
katherine.j.shinners@usdoj.gov

ELISSA FUDIM
*Trial Attorney*

## CERTIFICATE OF COMPLIANCE

This response to a petition for rehearing complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because it contains 2576 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word for Microsoft 365 in proportionally spaced Times New Roman 14-point font.

<i>s/ Katherine J. Shinners</i><br>
Katherine J. Shinners<br>
Senior Litigation Counsel

13

## CERTIFICATE OF SERVICE

I, Katherine J. Shinners, hereby certify that on November 4, 2025, I filed the forgoing brief through the CM/ECF system, which will provide electronic service to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                             *s/ Katherine J. Shinners*
                                             Katherine J. Shinners
                                             Senior Litigation Counsel