No. 25-1384

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

SVITLANA DOE, *et al.*,

*Plaintiffs-Appellees*,

v.

KRISTI NOEM, Secretary of Homeland Security, *et al.*,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the District of Massachusetts
No. 1:25-cv-10495-IT (Hon. Indira Talwani)

_____

**PLAINTIFFS-APPELLEES' REPLY IN SUPPORT OF
PETITION FOR REHEARING**

_____

John A. Freedman
Laura Shores
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com

H. Tiffany Jang
ARNOLD & PORTER
  KAYE SCHOLER LLP
200 Clarendon Street, Fl. 53
Boston, MA 02116
(617) 351-8053
tiffany.jang@arnoldporter.com

Justin B. Cox
LAW OFFICE OF JUSTIN B. COX
*JAC Cooperating Counsel*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Esther H. Sung
Karen C. Tumlin
Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org

<div style="display: flex;">
<div>

Daniel B. Asimow
ARNOLD & PORTER
  KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
(415) 471-3142
daniel.asimow@arnoldporter.com

</div>
<div>

karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceaction-center.org

</div>
</div>

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ....................................................................................................1

ARGUMENT ............................................................................................................1

I. The Panel's Reliance on the House Committee Report Is an Error that the Panel Should Decide Warrants Correction Through Rehearing ...................1

II. Because the Parties Agree the Panel's Discussion of 8 U.S.C. § 1182(d)(5) Does Not Bind the District Court's Merits Decision, Rule 40 Relief is Not Necessary ........................................................................8

CONCLUSION .......................................................................................................10

CERTIFICATE OF COMPLIANCE ......................................................................12

CERTIFICATE OF SERVICE ................................................................................13

## TABLE OF AUTHORITIES
Page(s)

**Cases**

*Bostock v. Clayton County*,
 590 U. S. 644 (2020)..................................................................................................2

*Cruz-Miguel v. Holder*,
 650 F.3d 189 (2d Cir. 2011) .......................................................................................7

*E.V. v. Raycraft*,
 No. 4:25-cv-2069, 2025 WL 2938594 (N.D. Ohio Oct. 16, 2025) ....................10

*Husic v. Holder*,
 776 F.3d 59 (2d Cir. 2015) .........................................................................................8

*Lattab v. Ashcroft*,
 384 F.3d 8 (1st Cir. 2004) ...........................................................................................7

*Ortega-Cervantes v. Gonzales*,
 501 F.3d 1111 (9th Cir. 2007) ....................................................................................7

*Penobscot Nation v. Frey*,
 3 F.4th 484 (1st Cir. 2021).........................................................................................3

*Perez Guerra v. Woosley*,
 No. 4:25-cv-119-RGJ, 2025 WL 3046187
 (W.D. Ky. Oct. 31, 2025) .......................................................................................10

*Polo v. Chestnut*,
 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025).........................................................8

*Sherley v. Sebelius*,
 689 F.3d 776 (D.C. Cir. 2012)..................................................................................9

*United States v. Charles George Trucking Co.*,
 823 F.2d 685 (1st Cir. 1987)......................................................................................2

**Statutes**

8 U.S.C. § 1101(a)(15).................................................................................................5

8 U.S.C. § 1153(b)(1) ............................................................................................5

8 U.S.C. § 1182(d)(5) ............................................................................................3

8 U.S.C. § 1184(p) .................................................................................................5

8 U.S.C. § 1252(e)(3)(A) .......................................................................................9

8 U.S.C. § 1430 .....................................................................................................5

Pub. L. No. 104-208 ..............................................................................................3

**Regulations**

8 C.F.R. § 319.1(b)(2)(ii)(B) .................................................................................5

**Legislative Materials**

H.R. 2202 ......................................................................................................2, 3, 4

H.R. Rep. 104-469 .................................................................................1, 3, 5, 6, 7

# INTRODUCTION

Defendants' response (Gov. Br.) confirms that the petition for rehearing should be granted. With regard to the panel's discussion of legislative history from H.R. Rep. 104-469 in interpreting 8 U.S.C. § 1182(d)(5), Defendants offer mutually incompatible positions both that the error is immaterial and that the legislative history is not erroneous. Both positions ignore basic cannons of statutory construction. Moreover, Defendants' discussion of H.R. Rep. 104-469 is selective and anachronistic in a way that heavily distorts the history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

With regard to the panel's discussion of 8 U.S.C. § 1182(d)(5), Defendants do not dispute that the District Court is free to revisit the proper interpretation of the statute, Congress has conferred primacy to interpret the expedited removal statute to the United States District Court for the District of Columbia, and that the District of Columbia and every other district court to consider the question has rejected Secretary Noem's novel interpretation of her expedited removal authority as to parolees. The Court should grant the petition for review.

# ARGUMENT

## I. The Panel's Reliance on the House Committee Report Is an Error that the Panel Should Decide Warrants Correction Through Rehearing

Defendants concede that the legislative history the panel referenced (H.R. Rep. 104-469) consisted of a House Judiciary Committee report for different

1

legislation (H.R. 2202) that was never enacted, and they do not dispute that neither party cited this legislative history in its briefing. *See* Gov. Br. 5–6.

    1. Defendants' lead argument is that rehearing is not warranted because the panel's decision would stand even without taking into account that legislative history. *See* Gov. Br. 1–2. This argument rests at worst on a distortion of the panel's decision, and at best on a presumption regarding the panel's reasoning; but litigants should not presume to know the minds of judges.

    The panel did not state that the statutory text alone supported its decision. Rather, the panel stated that the "statutory text . . . favors" its construction and that the "legislative history . . . *also* weighs in favor" of it. Op. 24, 26. As the panel itself stated, "[i]f the statutory text is *ambiguous or unclear*, we may look to legislative history to ascertain congressional intent." Op. 23 (emphasis added). If the statutory text alone "more than support[ed] its conclusion," then the panel would not have needed to look to legislative history for "additional support." Gov. Br. 1, 2, 8. In fact, it would have violated the basic canon that a "court will resort to the legislative history . . . only when the literal words of the statute create ambiguity or lead to an unreasonable interpretation." *United States v. Charles George Trucking Co.*, 823 F.2d 685, 688 (1st Cir. 1987). If "the meaning of the statute's terms is plain, [the court's] job is at an end." *Bostock v. Clayton County*, 590 U. S. 644, 673–74 (2020). That is, if "the statutory scheme is coherent and consistent, [courts] do not look to

legislative history or Congressional intent." *Penobscot Nation v. Frey*, 3 F.4th 484, 490–91 (1st Cir. 2021). As for Defendants' suggestion that any error can be corrected through errata, *see* Gov. Br. 8, this too is presumptuous: only the panel knows how material its discussion of inapposite legislative history was, and how any necessary correction should be made.

2. Defendants then raise a host of points—never raised in their original briefing—discussing purported similarities between cherry-picked language in H.R. Rep. 104-469 regarding the not-adopted bill H.R. 2202 and the language in H.R. 2610 which was ultimately adopted as Pub. L. No. 104-208 and codified at 8 U.S.C. § 1182(d)(5). Gov. Br. 2–6. To be clear, H.R. 2202 proposed many restrictions on parole, and the H.R. Rep. 104-469 committee report discusses a proposed "[r]eform of parole" that did not even make it into the final legislation. The proposed amendment consisted of restrictively defining the substantive grounds on which parole could be granted: "specified urgent humanitarian reasons," and "specified public interest reasons." H.R. Rep. 104-469, at 140–41; *see also id*. at 174–75 (noting that the proposed amendment "restricts the use of parole authority to allow aliens to enter the U.S. to specific reasons that are strictly in the public interest or are matters of urgent humanitarian concern"); *id*. at 258.[1] The dissenting views

---

[1] For example, H.R. 2202 proposed to define "urgent humanitarian reason" as "only" being satisfied if the prospective parolee (i) "has a medical emergency and . . . cannot

3

observed that the specific limitations would "unwisely tie[] the Administration's hand in an area where flexibility is always needed." *Id*. at 538. The "sweeping new restrictions" referred to efforts to constrain the Attorney General's "appropriate flexibility." *Id*. Ultimately, these restrictions were rejected, never even making it to the House floor. *See* Appx-0184 (Schacher Decl.) ¶ 21.

Defendants also focus on prefatory language in H.R. Rep. 104-469 that uses the phrase "case-by-case." Gov. Br. 3–4. But its acontextual reading both: (i) ignores that parole was already understood at the time to require case-by-case consideration, including by the federal government,[2] and (ii) fails to counter that the language the panel cited was directed at proposed (but never enacted) restrictive definitions of "humanitarian reasons" and "public interest." The fact that H.R. Rep. 104-469's discussion of the proposed parole amendments begins by stating that "[t]he text of [§ 1182(d)(5)] is clear that the parole authority was intended to be used on a case-

---

obtain necessary treatment in the foreign state . . . or the medical emergency is life-threatening and there is insufficient time for the alien to be admitted through the normal visa process," (ii) "is needed in the United States in order to donate an organ or other tissue for transplant into a close family member," or (iii) "has a close family member in the United States whose death is imminent and the alien could not arrive in the United States in time to see such family member alive if the alien were to be admitted through the normal visa process." H.R. 2202 Sec. 523.

[2] *See, e.g.*, Appx-0181-84 (Schacher Decl.) ¶¶ 9, 22–23; Appx-0211 (Schwartz Decl.) ¶ 37 (discussing 1988 Meese memorandum); Appx-0247 (April 1995 State Department briefing); Appx-0248, 0252 (May 1995 White House talking points); and Appx-0259, 0266 (May 1995 Statement of Attorney General Janet Reno).

by-case basis to meet specific needs," reflects both that agency practice prior to the proposed amendment had been to apply parole on a case-by-case basis, and that Congress believed the statutory text before the amendment was *already* "clear" that parole was to be "***used***" (notably, not only granted) on a case-by-case basis. In other words, the case-by-case nature of parole authority was already agency practice and considered implicit in the statute,³ and the addition of the "case-by-case" language only served to codify that practice. Accordingly, adding "case-by-case" would not have done and did not do any work in carrying out a supposed "explicit intent of limiting the Secretary's discretion to grant parole." Op. 26.

On the other hand, the House Judiciary Committee of the 104th Congress was critical of parole "[i]n recent years . . . be[ing] used increasingly to admit entire categories of aliens," and thus called for "*further*, specific limitations on the Attorney General's discretion." H.R. Rep. 104-469, at 140 (emphasis added). These specific limitations on the Secretary's discretion were advanced through the

---

³ Every other immigration benefit statute also implicitly has a case-by-case requirement, as every benefit statute administered by USCIS assesses immigrants on a case-by-case basis. *Compare, e.g.,* 8 U.S.C. § 1153(b)(1) (provision for EB-2 visas contains no express case-by-case requirement), *with* USCIS Policy Manual vol. 6, Part F, Ch. 5 (providing that USCIS considers EB-2 applicants "on a case-by-case basis"); 8 U.S.C § 1101(a)(15) & 1184(p) (U-visa provision contains no express case-by-case requirement), *with* USCIS Policy Manual vol. 3, Part c, Chs. 5, 7 (providing USCIS considers U-visa applications on a "case-by-case" basis); 8 U.S.C. § 1430 (naturalization statute provision concerning marital separation does not expressly require case-by-case review), *with* 8 C.F.R. § 319.1(b)(2)(ii)(B) (providing that USCIS is to examine separation "on a case-by-case basis").

5

proposed amendment which would have restrictively defined the "emergent reasons" and "reason deemed strictly in the public interest" that could justify parole. Again, those restrictions never even made it to the floor of the House.

Defendants' only counter is that the "case-by-case" language and the restrictive definitions can be analyzed as discrete provisions of the proposed amendment because the committee report delves into those restrictive definitions in a separate paragraph. *See* Gov. Br. 5. But H.R. Rep. 104-469 is still explicating the *same* proposed amendment in the subsequent paragraph. It only spends a paragraph introducing the other provision of the parole statute amendment (regarding reporting obligations), and explaining an example of what the committee regarded to be an inappropriate "use of the parole authority," before explaining: "Parole should only be given on a case-by-case basis for specified urgent humanitarian reasons, such as life-threatening humanitarian medical emergencies, or for specified public interest reasons, such as assisting the government in a law-enforcement-related activity." H.R. Rep. 104-469, at 141. This paragraph is an explication of the "further, specific limitations" in the proposed amendment that was not enacted. The Committee Report nowhere separately elaborates on the "case-by-case" language because that is not what the proposed amendment concerned.

Finally, Plaintiffs do not dispute that certain members of the 104th Congress were broadly concerned about limiting parole authority in enacting IIRIRA, *see* Gov.

6

Br. 5–7, nor that many IIRIRA provisions were aimed at carrying out that general purpose. *See, e.g.*, Appx-0183 (Schacher Decl.) ¶¶ 19–20.[4] But this does not establish that IIRIRA added specifically the "case-by-case" language to § 1182(d)(5) "with the explicit intent of limiting the Secretary's discretion to *grant* parole." Op. 26.[5] Where "[l]egislative history indicates a general intent" behind IIRIRA but "does not address procedural questions with either clarity or specificity," it is ambiguous at best. *See Lattab v. Ashcroft*, 384 F.3d 8, 18 (1st Cir. 2004) (discounting

---

[4] For example IIRIRA Section 603 provided that long-term parolees who had not become legal permanent residents would count against the annual numerical caps on family-sponsored immigration, diminishing the available number of family-based visas from a particular country by the same number of its nationals who are long-term parolees. *See* Appx-0139 (Schacher Decl.) ¶ 19 (discussing Section 603).

[5] Nor do the cases cited by Defendants at page 7 of their brief concerning other courts' discussion of H.R. Rep. 104-469 support the panel's use of it here. For one, the cases do not demonstrate that the addition of "case-by-case" language specifically was intended to limit parole authority, only that the general goal to place limits on parole authority was carried forward from H.R. 2202 through the enactment of IIRIRA. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 199 n.15 (2d Cir. 2011) (citing H.R. Rep. 104-469 for the proposition that the amendment was "animated by concern that parole under § 1182(d)(5)(A) was being *used* by the executive to circumvent congressionally established immigration policy" (emphasis added))*; Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007) (citing H.R. Rep. 104-469 for the proposition that "Congress responded [to that concern] in IIRIRA by narrowing the *circumstances* in which aliens could qualify for 'parole into the United States'" (emphasis added)). Neither of those cases point to sections of H.R. Rep. 104-469 that described the intent behind *unenacted* provisions of H.R. 2202. Nor do they extrapolate the language from H.R. Rep. 104-469 to find an intent to limit the discretion to *grant* parole, as opposed to the use of discretion to "circumvent congressionally established immigration policy." Under such circumstances, even if H.R. Rep. 104-469 may be "relevant" to parole amendments, Gov. Br. 7, it is inconclusive.

7

government's extensive references to H.R. Rep. 104-469); *see also, e.g.*, *Husic v. Holder*, 776 F.3d 59, 66 (2d Cir. 2015) (discounting "the government's highly generalized invocations of legislative purpose . . . based on scraps of legislative history" including H.R. Rep. 104-469); *Polo v. Chestnut*, 2025 WL 2959346, at *10 (E.D. Cal. Oct. 17, 2025) (questioning the government's approach of "identifying one of Congress' concerns in enacting IIRIRA and then treating it as Congress's sole concern driving the statute," particularly where IIRIRA otherwise addressed the concern). Without any specific evidence in the legislative history, the "case-by-case" language alone cannot be construed to have effectuated a sea change to the way that the Secretary exercised its parole authority, nor a "sweeping" restriction to the Secretary's discretion to grant parole; the language in H.R. 2202 that is analyzed in H.R. Rep. 104-469 that would have effectuated such a sweeping change was never enacted.

At a minimum, it would be helpful for the panel to amend its opinion to make clear the district court is not bound on remand and can consider this issue afresh.

## II. Because the Parties Agree the Panel's Discussion of 8 U.S.C. § 1182(d)(5) Does Not Bind the District Court's Merits Decision, Rule 40 Relief is Not Necessary

Because Defendants expressly acknowledge that the panel's discussion of 8 U.S.C. § 1182(d)(5) does not bind the district court's for its merits review, there is no longer a dispute requiring the Court's input on this issue. *See* Gov. Br. 9–10

(concurring with Plaintiffs' position that "preliminary injunctive relief is predictive and does not conclusively resolve the rights of parties on the merits" and "Plaintiffs are free to argue to the district court what they believe the implications of that ruling are on future decisions.").[6] Nonetheless, amendment by the panel would still be helpful to expressly state that the district court is not bound by the panel's discussion of 8 U.S.C. § 1182(d)(5).

Nor do Defendants dispute the primacy of the United States District Court for the District of Columbia to interpret the expedited removal statute in light of Congress' conferral of exclusive jurisdiction to that court, *see* 8 U.S.C. § 1252(e)(3)(A). While Defendants note that court's determination in *Coalition for Humane Immigrant Rights v. Noem*, No. 25-CV-872 (D.D.C.) ("*CHIRLA*") is on appeal, they do not acknowledge that: (i) Secretary Noem's request for a stay was unanimously denied by the D.C. Circuit, D.C. Cir. No. 25-5289 (Sept. 12, 2025), (ii) Secretary Noem's stay request did not even seek a stay of the part of the *CHIRLA*

---

[6] To the extent that Defendants cite *Sherley v. Sebelius*, 689 F.3d 776 (D.C. Cir. 2012), *see* Gov. Br. 10, to suggest that interim appellate decisions decided on a preliminary injunction are "law of the case," they are wrong. *Sherley* held that "[t]o the extent an appellate court predicts, without making a definitive legal conclusion, that the plaintiffs *probably* or *likely* will or will not succeed on the merits, it cannot be said that the court 'affirmatively decided' the issue such that it would bind a[ ] court at a later stage of the litigation." 689 F.3d at 781–83. *Sherley* distinguished that general rule from a situation where—unlike here—the appellate court reviews a "definitive, fully considered [preliminary injunction] legal decision based on a fully developed factual record that included full briefing and argument without unusual time constraints." *Id.* at 781–82.

9

decision that concerned the March 25 FRN, (iii) Secretary Noem has not sought emergency relief from the Supreme Court, and (iv) numerous courts around the country have cited and agreed with the *CHIRLA* decision in rejecting Secretary Noem's novel interpretation of her expedited removal authority. In addition to the five decisions cited in the opening petition, Pet. 8, additional cases have rejected Secretary Noem's position. *See, e.g.*, *Perez Guerra v. Woosley*, No. 4:25-cv-119-RGJ, 2025 WL 3046187 (W.D. Ky. Oct. 31, 2025); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594 (N.D. Ohio Oct. 16, 2025); *E.V., et al., Petitioners-Plaintiffs, v. KEVIN RAYCRAFT, et al., Respondents-Defendants. Additional Party Names: M.F.E.*, No. 4:25-CV-2069, 2025 WL 3122837 (N.D. Ohio Nov. 7, 2025).

## CONCLUSION

For the foregoing reasons, the panel should grant rehearing and amend its opinion to make clear that the district court is not bound by its holdings on either of these two claims.

Dated: November 10, 2025         Respectfully submitted,

*/s/ John A. Freedman*
John A. Freedman                  Justin B. Cox
Laura Shores                      LAW OFFICE OF JUSTIN B. COX
ARNOLD & PORTER                   *JAC Cooperating Counsel*
  KAYE SCHOLER LLP                PO Box 1106
601 Massachusetts Avenue, NW      Hood River, OR 97031
Washington, DC 20001              (541) 716-1818
(202) 942-5000                    justin@jcoxconsulting.org

john.freedman@arnoldporter.com
laura.shores@arnoldporter.com

H. Tiffany Jang
ARNOLD & PORTER
  KAYE SCHOLER LLP
200 Clarendon Street, Fl. 53
Boston, MA 02116
(617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow
ARNOLD & PORTER
  KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
(415) 471-3142
daniel.asimow@arnoldporter.com

Esther H. Sung
Karen C. Tumlin
Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Reply in Support of Petition for Rehearing complies with the type-volume limitation in Federal Rule of Appellate Procedure 40(d) because it contains 2,654 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

Dated: November 10, 2025                Respectfully submitted,

                                        */s/ John A. Freedman*
                                        John A. Freedman

                                        *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, I electronically filed the foregoing document using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

*/s/ John A. Freedman*
John A. Freedman

*Counsel for Plaintiffs-Appellees*